IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

KRISHNA PRASAD ADHIKARI,      )
ET AL.,                       )
                              )
     Plaintiffs,              )
                              )
         v.                   )   1:15-cv-1248 (JCC/TCB)
                              )
KBR, INC.,                    )
ET AL.,                       )
                              )
     Defendants.              )

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' motions
to dismiss for improper venue, lack of personal jurisdiction,
lack of subject matter jurisdiction, and failure to state a
claim upon which relief can be granted.  In the alternative,
Defendants move to transfer this case to the Southern District
of Texas.  Plaintiffs oppose those motions and move for
jurisdictional discovery.  For the following reasons, the Court
finds that venue is not proper in this District.  Accordingly,
the Court will transfer to the Southern District of Texas
pursuant to 28 U.S.C. § 1406(a).

# I.   Background[1]

This case arises from allegations that an Iraqi company,[2] working on behalf of Defendants, trafficked Nepali men to U.S. military bases in Iraq, where the men were forced to work for Defendants for over a year.  The Iraqi company, Daoud & Partners, is not a defendant in this lawsuit.  Defendants[3] are six businesses[4] that, in varying capacities, administer the U.S. Army contract for the provision of logistical support services

---

[1]   Because the Court has not conducted an evidentiary hearing, the Court views the facts in the light most favorable to Plaintiffs and resolves all factual disputes in Plaintiffs' favor.  *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *T. & B. Equip. Co., Inc. v. RI, Inc.*, No. 3:15-cv-337, 2015 WL 5013875, at *2 (E.D. Va. Aug. 24, 2015).

[2]   The company at issue, Daoud & Partners, is incorporated in the British Virgin Islands, but operates exclusively in Iraq. (Compl. [Dkt. 1] ¶ 31.)

[3]   The Complaint also named John Does 1-5 as defendants.  The Court dismissed the Complaint without prejudice as to Defendants John Does 1-5 for failure to timely serve process, *see* Fed. R. Civ. P. 4(m), and failure to allege that the identities of the John Does were capable of discovery, *see Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982).  Accordingly, the unidentified John Does are not considered for purposes of this venue and transfer assessment.  *See Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1201 (8th Cir. 1990) (considering venue after one defendant had "dropped out"); *Beloff v. Seaside Palm Beach*, No. 13-100, 2013 WL 3488978, at *2 (E.D. Pa. July 11, 2013) (finding venue proper after voluntary dismissal of several defendants); *Brown v. Bandai Am., Inc.*, No. 3:01-cv-442R, 2001 WL 720464, at *1 (N.D. Tex. June 25, 2001) (evaluating venue after voluntary dismissal).

[4]   Those businesses include KBR, Inc.; Kellogg Brown & Root LLC ("KBR, LLC"); Kellogg Brown & Root Services, Inc. ("KBRSI"); KBR Technical Services, Inc. ("KBR Technical"); Kellogg Brown & Root International, Inc. ("KBRII"); Service Employees International Inc. ("SEII"); and Overseas Administration Services ("OAS").

and laborers to U.S. military bases overseas, LOGCAP III.[5]
Defendant KBR, Inc. is the parent corporation of the other
defendants, but Kellogg Brown & Root Services, Inc. ("KBRSI")
and Kellogg Brown & Root, LLC ("KBR, LLC") are the subsidiaries
that primarily oversee the administration of LOGCAP III.  (Lowes
Decl. [Dkt. 16-1] ¶¶ 4, 11.)

        As early as 2003, Defendants' managers in the United
States and Iraq learned that their labor brokers, including
Daoud, were engaged in deceptive practices in the recruitment
and transportation of laborers to U.S. military bases.  (Compl.
¶¶ 95-98.)  Specifically, allegations surfaced that brokers
promised laborers jobs in Oman, Jordan, or Kuwait but then took
the laborers' passports, transported the laborers to Iraq, and
forced them to work in deplorable conditions at U.S. military
bases.  (Compl. ¶¶ 98-106.)  Defendants' managers in the United
States and Iraq received reports of those practices from the
media, diplomats, U.S. armed forces personnel, employees,
subcontractors, and third-country nationals.  (Compl. ¶¶ 99-
118.)  Despite knowing that Daoud and other brokers were
deceiving laborers, Defendants' managers in the United States
and abroad "took no effective steps to eliminate the abuses; to
implement or enforce an effective code of conduct; to

---

[5]    "LOGCAP III" is the third generation of the U.S. Army's
Logistics Civil Augmentation Program.  (Compl. ¶ 17.)

discipline, penalize or remove the labor brokers who were implicating human trafficking; or to reduce or terminate [their] reliance on Daoud and other labor brokers when they engaged in these foreseeable human rights violations." (Compl. ¶¶ 126, 128, 129.)  At times, Defendants even sought to silence potential whistleblowers and squash allegations of the brokers' wrongdoing.  (Compl. ¶¶ 129-135.)

Plaintiffs' experiences are emblematic of the human rights complaints Defendants received.  Plaintiffs are five Nepali men[6] who were allegedly trafficked from Nepal to Jordan, and finally to Iraq, where they were forced to work on U.S. military bases and denied the ability to leave or even call home.  Each Plaintiff paid a Nepali recruiting company to obtain a job at a hotel in Jordan.  The Nepali recruiter helped Plaintiffs travel to Jordan under the promise of employment. But upon arrival, a Jordanian labor broker locked Plaintiffs in a cramped compound with other Nepali men and refused to return their passports.  (Compl. ¶¶ 54-66.)  After being kept against their wills in the compound for "some time," around August 2004 Plaintiffs were placed into several jeeps and driven to unannounced destinations.  (Compl. ¶ 69.)

---

[6]     The Plaintiffs are Krishna Prasad Adhikari, Biplav Bhatta, Lukendra Gurung, Sanjiv Gurung, and Suraj Lamichhane (collectively "Plaintiffs").  (Compl. ¶¶ 7, 9, 11, 13, 15.)

The brokers drove four of the plaintiffs to the U.S. military base Camp Fallujah in Iraq and handed them over to men with "Daoud & Partner" badges.  (Compl. ¶¶ 71-72.)  Plaintiffs protested in vain to "men from KBR and Daoud" that they had been brought to Iraq against their wills and demanded the return of their passports.  (Compl. ¶ 73.)  Plaintiffs persisted in their protests for weeks, culminating in a five day workers' strike. (Compl. ¶ 75.)  The strike was ultimately put down when "KBR and Daoud responded by refusing to provide food to the Plaintiffs unless they returned to work."  (Compl. ¶ 75.)

The fifth plaintiff, Lamichhane, was taken to camp Al Taqqadum, also in Iraq.  (Compl. ¶ 71.)  Upon arrival, a supervisor told Lamichhane he would be working for "KBR." (Compl. ¶ 76.)  Lamichhane demanded his passport and to be returned home, but "KBR employees told him he could not leave and that his passport would not be returned."  (Compl. ¶ 76.)

For the next fourteen to twenty-nine months, employees of Daoud and an unspecified KBR entity allegedly forced Plaintiffs to labor on the U.S. military bases.  Plaintiffs were denied their passports, had limited access to the bases, lived in cramped quarters, feared for their lives due to the hostilities in Iraq, were forced to work long hours without reprieve, and were not paid their promised salaries.  (Compl. ¶¶ 79-86.)  Those terrible conditions continued for over a year

until Daoud and Defendants' employees allowed Plaintiffs to

return to Nepal in October 2005, early 2006, and January 2007.

(Compl. ¶ 87.)

In September 2015, Plaintiffs filed suit alleging that

Defendants substantially assisted in the human trafficking and

forced labor scheme described above and/or failed to prevent or

stop that scheme.  Plaintiffs allege that those actions violate

the following nine laws: (1) the Trafficking Victims Protection

Reauthorization Act, 18 U.S.C. §§ 1589, 1590, 1595, 1596; (2)

the Alien Tort Statute, 28 U.S.C. § 1350;[7] (3) Article 13 of the

Law of Administration for the State of Iraq for the Transitional

Period;[8] (4) Articles 202, 203, and 204 of the Iraqi Civil Code;[9]

(5) Common Law False Imprisonment; (6) Common Law Negligence;

(7) Common Law Negligent Hiring; (8) Common Law Negligent

Supervision; and (9) Common Law Intentional Infliction of

Emotional Distress.  (Compl. ¶¶ 193-256.)

In response, Defendants moved to dismiss this case for

lack of personal jurisdiction and improper venue, in addition to

---

[7]     The ATS, 28 U.S.C. § 1350, authorizes aliens to bring claims for a limited set of international law violations.
[8]     Article 13(G) of Iraq's transitional constitution forbids "slavery, the slave trade, forced labor, and involuntary servitude with or without pay."
[9]     Of those three articles, Article 202 does the heavy lifting.  *See* Civil Code No. 40 of 1951 (Iraq), art. 202 ("Every act which is injurious to persons such as murder, wounding, assault, or any other kind of inflicting injury entails payment of damages by the perpetrator.").

other bases for dismissal that are not at issue here.  In the alternative, Defendants moved to transfer this case to the Southern District of Texas, where a related case was transferred from California in 2009.  *See Adhikari v. Daoud & Partners*, No. 4:09-cv-1237 (S.D. Tex. transferred Apr. 24, 2009).  These motions have been fully briefed and argued before the Court at an oral hearing.  They are now ripe for disposition.

As described below, venue is not proper in this District and the Court will transfer this case pursuant to 28 U.S.C. § 1406(a) to the Southern District of Texas. Accordingly, the Court does not reach Defendants' alternative bases to dismiss this suit.

## II.   Standard of Review

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to challenge a plaintiff's choice of venue in a pre-answer motion.  When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. *Bartholomew v. Va. Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979), *overruled on other grounds by Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 125 n.6 (1982).  But if no evidentiary hearing is held, "the plaintiff need only make a prima facie showing of venue."  *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).  In its analysis, the court need not accept the pleadings as true and may consider outside evidence.  *See*

7

*Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006); *T. & B. Equip. Co. v. RI, Inc.*, No. 3:15-cv-337, 2015 WL 5013875, at *2 (E.D. Va. Aug. 24, 2015). Nonetheless, the court must draw all reasonable inferences in favor of the plaintiff. *T.& B. Equip.*, 2015 WL 5013875, at *2.

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant affirmatively raises a personal jurisdiction challenge, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). The plaintiff's burden "varies according to the posture of a case and the evidence that has been presented to the court." *Id.* "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Id.* When considering whether a plaintiff has carried its burden, the court must view all evidence, disputed facts, and reasonable inferences in favor of the plaintiff. *Id.*; *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

### III.   Analysis

Generally courts will address personal jurisdiction challenges before considering whether venue is proper.  *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).  Courts, however, are not required to proceed in that order and have discretion to address venue challenges first when sound prudential reasons exist for doing so.  *Id.*; *Sucampo*, 471 F.3d at 550 n.3.  Furthermore, a court need not have personal jurisdiction over defendants before transferring a case.  *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not.").  Because the Court's venue analysis incorporates personal jurisdiction issues, and because venue is found to be improper here, the Court will begin with the venue analysis.  As described below, the Court will not determine whether personal jurisdiction is proper as to each defendant because venue is not proper and the Court will transfer this case pursuant to 28 U.S.C. § 1406(a).

A.        Venue

Plaintiffs argue that venue is proper in the Eastern District of Virginia because (1) a substantial part of the events or omissions giving rise to the claim occurred in this

9

District, *see* 28 U.S.C. § 1391(b)(2); or (2) all Defendants are residents of this forum, *see* § 1391(b)(1); or (3) there is no district in which the action may otherwise be brought and at least one defendant is subject to personal jurisdiction in this District, *see* § 1391(b)(3).  The Court will address each theory of venue in turn.

1.      <u>Transactional Venue Under § 1391(b)(2) is Not Proper in Any District</u>

Section 1391(b)(2) provides for venue "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Determining whether venue is proper under this provision requires a two-part analysis.  *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005).  First, the court must identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims.  *Id.*  Second, the court must determine whether a substantial part of those acts or omissions occurred in this District.  *Id.*  The Court will address those steps in turn.

Each of Plaintiffs' claims seeks to remedy injuries Plaintiffs suffered from being trafficked from Nepal to Iraq, where they were forced to work against their wills.  Under Plaintiffs' theories, employees overseeing the LOGCAP III contract from Virginia failed to address complaints that labor

10

brokers in Iraq were engaged in human trafficking and forced labor.  Defendants' alleged complacency and neglect permitted Plaintiffs' to be forcibly trafficked from Nepal to Iraq, where Defendants' employees allegedly made them work in deplorable conditions on a U.S. military base.  Plaintiffs allege that Defendants' roles in those acts of human trafficking and forced labor give rise to liability under the Victims Protection Reauthorization Act, 18 U.S.C. §§ 1589, 1590, 1595, international law prohibiting slavery and human trafficking,[10] the Iraqi Civil Code, the Transitional Law of Iraq, and Virginia common law prohibiting false imprisonment, negligence, negligent hiring, negligent supervision, and intentional infliction of emotional distress.

The Court turns now to the central question of whether a substantial part of the acts or omissions giving rise to the claims discussed above occurred in this District.  This analysis looks to the "entire sequence of events underlying the claim," not only "those matters that are in dispute or that directly led to the filing of the action."  *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).  However, events or omissions "that might only have some tangential connection with the dispute in litigation are not enough."  *CMA CGM, LLC v. RLI Ins. Co.*, No.

---

[10]    Plaintiffs bring their international law violations through the Alien Tort Claims Act, 28 U.S.C. § 1350.

12-cv-03306, 2013 WL 588978, at *2 (D. Md. Feb. 13, 2013)
(quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d
291, 294 (3d Cir. 1994)).  In other words, courts "take
seriously the adjective 'substantial.'"  *Gulf Ins. Co. v.
Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005).

 Typically, venue analysis requires a claim-by-claim
assessment of where the claim substantially arose.  *See, e.g.*,
*Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 386 (S.D.N.Y.
2010).  Several of Plaintiffs' claims, however, are merely
alternate theories of recovery for the same alleged acts and
injuries.  Specifically, Counts I, II, III, IV, V, and IX all
attempt to hold Defendants liable for forced labor, involuntary
servitude, slavery, false imprisonment, intentional infliction
of emotional distress, or human trafficking.  Plaintiffs make no
attempt in their briefing to argue that the particular theory of
relief affects the venue analysis.  Accordingly, the Court will
consider Counts I-V and IX together under the broad grouping of
human trafficking and forced labor arising from a common nucleus
of operative fact.

 In human trafficking and forced labor cases, the venue
assessment typically turns on where the victims were trafficked
and where they were forced to work.  For example, in *Maysaroh v.
American Arab Communications & Translation Center, LLC*, 51 F.
Supp. 3d 88 (D.D.C. 2014), the court found that a substantial

part of the plaintiff's human trafficking, false imprisonment, and unpaid wages claims did not occur in the District of Columbia, even though the plaintiff was forced to work in D.C. for sixty-two hours. *Id.* at 93. The plaintiff's work in D.C. was not a "substantial" part of the human trafficking claims because it amounted to only 1.3% of the hours she was forced to work. *Id.* (citing several cases reaching similar outcomes). That conclusion is consistent with courts' general practice in tort cases of emphasizing the location where the harm and the tortious acts occurred. *See, e.g.*, *Estate of Abtan v. Blackwater Lodge & Training Ctr.*, 611 F. Supp. 2d 1, 8 (D.D.C. 2009); 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3806 (4th ed. 2016) ("In tort cases, courts tend to focus on where the allegedly tortious actions took place and where the harms were felt.").

In light of the above principles, Plaintiffs have not established a prima facie case that venue is proper in this District under § 1391(b)(2) because the acts that occurred here are not a substantial part of the human trafficking, forced labor, false imprisonment, and related abuses that occurred in Nepal, Jordan, and Iraq. The activities in this District involved high-level oversight of the LOGCAP III contract. That oversight included monitoring of civilian labor demand on U.S. military bases, monitoring subcontractor reporting, and

13

responding to employee and media inquiries into allegations of illegal labor practices by subcontractors.  Employees operating out of KBRSI's Virginia office also likely had the authority to create policies regarding human trafficking or to instruct KBR employees operating abroad to terminate Daoud's contract.  Acts or omissions in this District may have cultivated an environment that allowed illegal labor practices to flourish, but the high-level oversight in this District did not compel or direct the illegal practices occurring abroad.  Instead, Plaintiffs' injuries arose from the intervening illegal acts of a subcontractor operating solely abroad and the complacency of that subcontractor's direct supervisors, who were also working abroad.  In sum, the broad oversight occurring in this District is not a substantial part of claims I-V and IX because Plaintiffs suffered their harms exclusively abroad, the individuals imposing those harms and the individuals directly responsible for preventing those harms were located abroad, and the policies emanating from this District enabled, rather than directed those abuses.

The only remaining claims are Counts VI, VII, and VIII, which allege theories of negligence, negligent hiring, and negligent supervision relating to Defendants' hiring and oversight of Daoud.  As with the human trafficking and forced labor claims, the Court finds that a substantial part of the

acts or omissions giving rise to those claims did not occur in
this District.  Again, Plaintiffs emphasize that KBRSI and KBR,
LLC engaged in oversight of the LOGCAP III contract and related
subcontracts from an office within this District.  That
oversight is certainly a relevant part of Plaintiffs' claims,
but it is not a "substantial" part when considering that Daoud
was not hired in Virginia, Daoud operates solely in Iraq, Daoud
is not alleged to have ever been to Virginia, Daoud was most
directly supervised by Defendants' employees operating overseas,
and the injuries were inflicted entirely abroad.  In light of
those facts, the Court concludes that Plaintiff has not made a
prima facie showing that a substantial part of the acts or
omissions giving rise to Counts VI, VII, and VIII occurred in
this District.

> 2.      <u>Venue is Not Proper Under § 1391(b)(1)</u>
> <u>Because Not All Defendants are Virginia</u>
> <u>Residents</u>

Plaintiffs next argue that venue is proper in this
District under § 1391(b)(1) because all Defendants are residents
of this District.  As described below, the Court disagrees.

For venue purposes, Defendants are residents of any
judicial distinct in which they are "subject to the court's
personal jurisdiction with respect to the civil action in
question."  28 U.S.C. § 1391(c)(2).  Whether personal
jurisdiction is proper depends on Virginia's long-arm

jurisdiction statute and the constitutional requirements of due process. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Virginia's long-arm statute, however, extends personal jurisdiction to the fullest extent permitted by due process. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002); *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 512 S.E.2d 560, 562 (Va. 1999). Thus, the statutory inquiry merges into the constitutional due process analysis. *Geometric Ltd.*, 561 F.3d at 277; *Peninsula*, 512 S.E.2d at 560.

There are two types of personal jurisdiction that meet the requirements of due process: general and specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction exists only when the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (quoting *Goodyear*, 564 U.S. at 919). "[O]nly a limited set of affiliations with a forum" will satisfy this standard, typically only the defendant's place of incorporation and principal place of business. *Id.* When general jurisdiction is present, a court may exercise personal jurisdiction over the defendant in all suits, even those "not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales*

16

*de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984)
(citation omitted).

　　　　Specific jurisdiction, by contrast, requires a
comparison of the defendant's contacts in the forum with the
subject of the lawsuit. *Goodyear*, 564 U.S. at 919.  To assess
specific jurisdiction, courts consider: "(1) the extent to which
the defendant has purposefully availed itself of the privilege
of conducting activities in the state; (2) whether the
plaintiffs' claims arise out of those activities directed at the
state; and (3) whether the exercise of personal jurisdiction
would be constitutionally 'reasonable.'"  *Carefirst*, 334 F.3d at
397 (citation omitted).

　　　　Under the above principles, venue is not proper in
this District because this Court has no personal jurisdiction
over Defendants KBR, Inc. and KBRII.[11]  *See* 28 U.S.C.
§ 1391(b)(1) (requiring *all* defendants to reside in the forum
state).

---

[11]　　The lack of personal jurisdiction over several Defendants
provides an independent basis to transfer pursuant to 28 U.S.C.
§ 1406(a).  *See Saudi v. Northrop Grumman Corp.*, 427 F.3d 271,
277 (4th Cir. 2005) ("Section 1406(a) has been construed to
permit transfer where personal jurisdiction is lacking in the
transferor court, but would be available in an alternate forum."
(citing *In re Carefirst of Md., Inc.*, 305 F.3d 253, 255-56 (4th
Cir. 2002)).

a.      KBR, Inc. is Not Subject to Personal
        Jurisdiction in Virginia

KBR, Inc. is not subject to general or specific
personal jurisdiction in Virginia.  Turning first to general
jurisdiction, KBR, Inc.'s contacts with Virginia are not so
continuous and systematic as to render it essentially at home
here.  Plaintiffs emphasize that KBR, Inc. leases an office in
Virginia.  The document Plaintiffs rely on to support that
contact, however, reveals thirteen other offices KBR, Inc. owns
or leases outside Virginia.  *See* KBR, Inc., Annual Report (Form
10-K/A) (Sept. 18, 2015).  KBR, Inc.'s leasing of one office
complex in this forum within its large portfolio of corporate
properties is not sufficient to render Virginia its "home," when
KBR, Inc. is incorporated in Delaware, has its principal place
of business in Houston, Texas, and has no agent for service of
process in Virginia.

Similarly, Plaintiff has not alleged sufficient facts
to conclude that KBR, Inc. is subject to specific personal
jurisdiction in Virginia.  Again, Plaintiffs emphasize that KBR,
Inc. leases an office building in Virginia where KBRSI and KBR,
LLC oversee the LOGCAP III contract.  The allegations in this
case, however, do not involve a dispute regarding the ownership
and control of that building, they involve human trafficking
that occurred in Nepal, Jordan, and Iraq.  Consequently, the

claims in this case cannot be found to arise out of KBR, Inc.'s role as a corporate lessor of Virginia property.  The same is true of unidentified emails or communications that KBR, Inc. employees might have sent into Virginia.  Such communications have not been identified or alleged, and could not be said to give rise to Plaintiffs' claims of human trafficking abroad. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 708, 714 (4th Cir. 2002) (looking for electronic activity that creates, "in a person within the State, a potential cause of action cognizable in the State's courts").  Accordingly, the Court lacks specific personal jurisdiction over Defendant KBR, Inc.

b.      KBRII is Not Subject to Personal Jurisdiction in Virginia

Although the lack of personal jurisdiction over even one defendant is sufficient to defeat venue under § 1391(b)(1), the Court also concludes that it lacks personal jurisdiction over Defendant Kellogg Brown & Root International, Inc. ("KBRII").  Looking first at general jurisdiction, Plaintiffs identify very few contacts between KBRII and Virginia. Plaintiffs emphasize that KBRII engaged in "extensive business" with KBRSI's Virginia office while KBRII implemented LOGCAP III abroad.  That business, however, is not sufficient to deem KBRII "at home" in Virginia when KBRII is not incorporated in

Virginia, has no office in Virginia, maintains no agent for
service of process in Virginia, and operates principally out of
an office in Houston, Texas, as well as overseas offices.
Accordingly, the Court may not exercise general jurisdiction
over KBRII.

KBRII's "extensive business" contacts with Virginia
are more relevant in the specific jurisdiction analysis, but
still fall short of demonstrating a prima facie case of
jurisdiction.  Plaintiffs present an email as evidence of the
type of business KBRII conducts with KBRSI in Virginia.  (*See*
Pl.'s Ex. 18 [Dkt. 30-4].)  In the email, a KBRII employee in
Kuwait responded to a request from a Virginia-based KBRSI
employee by emailing a spreadsheet listing the amounts paid to
many subcontractors operating abroad, including Daoud.  (*Id.* at
2, 4-10.)  Although Plaintiffs present only one email, it is
reasonable to conclude that KBRII employees sent similar emails
to Virginia-based employees to accommodate KBRSI's requests for
subcontractor billing and performance reports.  Those
communications may indicate KBRII purposefully availed itself of
conducting business with an entity operating out of Virginia,
but they do not sufficiently give rise to the claims in this
case.  Plaintiffs fail to articulate how KBRII's sending of
payment data and reports to KBRSI and others in Virginia gives
rise to claims to address injuries inflicted and suffered

entirely in Iraq, Nepal, and Jordan.  *See ALS Scan*, 293 F.3d at
714 (requiring electronic activity to create cause of action in
person in the forum State).  Accordingly, the Court finds that
Plaintiffs have not established a prima facie case of personal
jurisdiction over Defendant KBRII.

The Court need not consider whether personal
jurisdiction is proper over the remaining Defendants because
§ 1391(b)(1) venue does not exist unless "all defendants" are
forum residents.  As at least two Defendants are not subject to
personal jurisdiction in this District, they are not residents
of this District for venue purposes.  Accordingly, venue cannot
be based on § 1391(b)(1).

c.        Jurisdictional Discovery is Denied

Plaintiffs argue that the Court should not find
personal jurisdiction lacking without permitting an opportunity
for jurisdictional discovery.  "[T]he decision of whether or not
to permit jurisdictional discovery is a matter committed to the
sound discretion of the district court." *Base Metal Trading,
Ltd. v. OJSC "Novkuznetsky Aluminum Factory"*, 283 F.3d 208, 216
n.3 (4th Cir. 2002).  "Discovery under the Federal Rules of
Civil Procedure is broad in scope and freely permitted."
*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334
F.3d 390, 402 (4th Cir. 2003).  But a district court may deny
such discovery when "a plaintiff offers only speculation or

conclusory assertions about contacts with a forum state." *Id.*
Similarly, a court may deny discovery when "the plaintiff simply
wants to conduct a fishing expedition in the hopes of
discovering some basis of jurisdiction." *Base Metal Trading*,
283 F.3d at 216 n.3.

Plaintiffs' primary argument in support of
jurisdictional discovery is that Defendants obscured their
employees' corporate affiliations through a complex corporate
structure, making it impossible to identify the contacts of a
particular Defendant without discovery.  As an abstract
principal, the Court agrees that corporate shell games and
obfuscation can support the need for jurisdictional discovery.
*See Bracewell v. Nicholson Air Servs., Inc.*, 680 F.2d 103, 105
(11th Cir. 1982).  But under the particulars of this case,
Defendants' complex corporate structure is not so confusing as
to justify discovery.  Defendants have clarified their corporate
structure by disclosing which subsidiaries are most activity
engaged in LOGCAP III oversight and which subsidiaries operate
out of Virginia.  (*See* Lowes Decl. [Dkt. 16-1].)  Plaintiffs
shed further light on Defendants' corporate structure by
presenting affidavits, deposition testimony, and declarations
that Defendants produced in prior cases.[12]   Through those

---

[12]   For example, Plaintiffs submitted over 150 pages of
exhibits, including a list of Defendants' employees and their

exhibits, Plaintiffs and the Court have gained a clearer sense of Defendants' corporate structure.  For example, it is clear that KBRSI and KBR, LLC oversee the LOGCAP III contract out of Virginia and that employees of those companies are technically employed by the Houston-based payroll company KBR Technical. Furthermore, discovering additional emails or corporate affiliations will not shift the focus of the operative facts in this case from Iraq to Virginia.  In sum, based on Plaintiffs' sparse allegations regarding the two Defendants discussed above, and the many exhibits parties have already presented regarding jurisdictional contacts, the Court finds little indication that jurisdictional discovery will aid the resolution of the personal jurisdiction issue.  *See Carefirst*, 334 F.3d at 402-03; *ALS Scan*, 293 F.3d at 716 n.3.

> 3.      Venue is Not Proper Under § 1391(b)(3) Because Plaintiffs Could Have Brought this Action in the Southern District of Texas

Having found that venue is not proper under § 1391(b)(1) or § 1391(b)(2), the Court must consider whether

---

corporate affiliations at certain times.  (*See* [Dkt. 30-3] at 22-25.)  Additionally, Plaintiffs directed the Court to many sources of information from prior cases involving Defendants, including the following: Stagg Decl., *U.S. ex rel. Chillcot v. KBR, Inc.*, 4:09-cv-4018 (C.D. Ill. Apr. 9, 2013), ECF No. 44; Banks Decl., *Adhikari v. Daoud & Partners*, 4:09-cv-1237 (S.D. Tex. Oct. 23, 2012), ECF No. 405-5; Answers to Interrog. & Decl., *Gallaher v. KBR, Inc.*, 5:09-cv-69 (N.D.W. Va. Mar. 18, 2010), ECF Nos. 16-1, 19-21, 53-4, 53-12, 53-14, 53-15; Stagg Decl., *U.S. ex rel. Carter v. Halliburton Co.*, 2:06-cv-616 (C.D. Cal. Sept. 24, 2008), ECF No. 54-2.

the fallback venue provision of § 1391(b)(3) applies.  That
section permits venue in "any judicial district in which any
defendant is subject to the court's personal jurisdiction with
respect to such action."  That venue provision, however, only
applies when no other federal district in the United States is
an appropriate venue under § 1391(b)(1) or § 1391(b)(2).  *See*
§ 1391(b)(3); *Hirsch v. Johnson*, No. 1:14-cv-332, 2014 WL
2916748, at *7 (E.D. Va. June 26, 2014).  Section 1391(b)(3) is
inapplicable in this case because venue is proper in the
Southern District of Texas, as described below.

      The Southern District of Texas is a proper venue under
§ 1391(b)(1) because all Defendants are subject to personal
jurisdiction in that district.  As noted above, § 1391(b)(1)
applies when all defendants are residents of the same State.  A
business-entity defendant is a resident of any judicial district
in which it is subject to personal jurisdiction with respect to
the civil action in question.  If a defendant is not resident in
the United States, then the court should disregard the defendant
for purposes of the venue analysis.  *See* 28 U.S.C. § 1391(c)(3);
*Global Touch Sols., LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882,
895 (E.D. Va. 2015).

      All Defendants are residents of the Southern District
of Texas.  Defendants KBR, Inc.; KBR, LLC; KBRSI; KBRII; and KBR
Technical are all residents of that district because they

24

maintain their principal places of business in Houston.
Accordingly, they are subject to general jurisdiction in that
district.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)
(calling a corporation's principal place of business the
paradigm bases for general jurisdiction).

Personal jurisdiction also exists over OAS and SEII in
the Southern District of Texas.  Jurisdiction over those
defendants is not based upon their principal places of business
or places of incorporation, because both are incorporated in the
Cayman Islands and maintain their principal places of business
in the United Arab Emirates.  Nonetheless, several facts
indicate that OAS and SEII are subject to jurisdiction in Texas.

As an initial point, the Court notes that both OAS and
SEII recently defended an action in the Southern District of
Texas involving very similar allegations of human trafficking
and forced labor of Nepali men on U.S. military bases in Iraq.
*See Adhikari v. Daoud & Partners*, 95 F. Supp. 3d 1013 (S.D. Tex.
2015).  Although OAS's and SEII's defense in that case does not
conclusively demonstrate that jurisdiction is proper in Texas,
it is consistent with that conclusion.  *See Nader v. McAuliffe*,
549 F. Supp. 2d 760, 764 (E.D. Va. 2008) (finding it "obvious
that the transferee forum is appropriate" because related
litigation was pending there).

The Court finds additional support that personal jurisdiction is proper in the Southern District of Texas by considering the unique structure and purpose of OAS and SEII. Those entities exist solely to provide laborers to other KBR subsidiaries that are performing work overseas. OAS and SEII's employees have no function, nor do the companies themselves, other than to perform the tasks they are directed to perform by other KBR companies. In that sense, OAS and SEII function like employment departments for KBR entities' overseas operations. When Plaintiffs were allegedly trafficked and forced to work in Iraq,[13] OAS and SEII were entirely owned by KBRII and existed solely to provide laborers for KBRII's overseas work. Thus, it is only reasonable to conclude that OAS and SEII purposefully availed themselves of Texas by providing all of their employees to KBRII, which has its principal place of business, and only known U.S. office, in Houston, Texas. The claims in this lawsuit arise from those contacts with Texas because any work performed on behalf of KBRII in its execution of LOGCAP III in Iraq would technically have been performed by an OAS or SEII

---

[13]   For minimum contacts purposes, it is proper to consider the jurisdictional contacts as they existed at the time the claim arose. *See Stein v. Horwitz*, 191 F.3d 448 (table), 1999 WL 710355, at *2 (4th Cir. 1999) (unpub.) (considering minimum contacts at the time claim arose); *Rossman v. State Farm Mut. Auto Ins. Co.*, 832 F.2d 282, 287 n.2 (4th Cir. 1987); *KMLLC Media, LLC v. Telemetry, Inc.*, No. 1:15-cv-432, 2015 WL 6506308, at *12 (E.D. Va. Oct. 27, 2015).

employee under the direct control of KBRII.  Furthermore, the presence of OAS's and SEII's corporate parent in Houston, Texas and the companies' prior defense of a similar lawsuit in that district indicate that exercising personal jurisdiction there would not be constitutionally unreasonable.  Accordingly, the Court finds sufficient evidence, at this stage of the proceeding, that OAS and SEII are subject to personal jurisdiction in the Southern District of Texas.[14]

In conclusion, all Defendants are subject to personal jurisdiction in the Southern District of Texas and are deemed residents of that district for venue purposes, pursuant to 28

---

[14]    Even if OAS and SEII were not subject to personal jurisdiction in Texas, that would not affect the Court's venue analysis.  According to 28 U.S.C. § 1391(c)(3), a venue analysis should disregard the presence of any defendant that is not resident in the United States.  If OAS and SEII are not residents of the home state of their parent corporation of KBRII, then they would lack the minimum contacts required to satisfy personal jurisdiction in any State in the United States, and with the United States as a whole.  *See Global Touch Sols., LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882, 895 (E.D. Va. 2015). Accordingly, venue would remain improper in this District and proper in the Southern District of Texas.  The only effect of the lack of jurisdiction in Texas would be the severance and dismissal of OAS and SEII prior to transfer.  *See, e.g.*, *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 819 (3d Cir. 1982), *cert denied*, 459 U.S. 1156 (1983); *Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 785 (6th Cir.), *cert denied*, 366 U.S. 948 (1961); *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 664-66 (E.D. Va. 1998).  That seems an unjust result, considering Defendants consent to personal jurisdiction in the Southern District of Texas and recently defended a related lawsuit in that district.  (*See* Defs.' Reply in Supp. Transfer [Dkt. 48] at 5 ("SEII and OAS . . . did not challenge SDTX venue in *Adhikari I* and will not in this case.").)

U.S.C. § 1391(c)(2).  Therefore, venue is proper in the Southern
District of Texas under § 1391(b)(1).  Because venue is proper
in another district, Plaintiffs cannot invoke the fallback
provision of § 1391(b)(3) as a basis for venue in this District.

B.       The Court will Transfer Pursuant to 28 U.S.C.
         § 1406(a)

         When a plaintiff brings a case in an improper venue,
the court may dismiss the action or transfer it "to any district
in which it could have been brought" if transfer is "in the
interest of justice."  28 U.S.C. § 1406(a).  To determine where
a case "could have been brought," the "movant must establish
that both venue and jurisdiction with respect to each defendant
is proper in the transferee district."  *Koh v. Microtek Int'l,
Inc.*, 250 F. Supp. 2d. 627, 630 (E.D. Va. 2003).  If the movant
makes that showing, courts "generally favor transfer over
dismissal, unless there is evidence that a case was brought in
an improper venue in bad faith or to harass defendants."  *Cont'l
Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 754 (E.D.
Va. 2012) (quotation omitted); *see also Porter v. Groat*, 840
F.2d 255, 258 (4th Cir. 1988) (finding it in the "'interest of
justice' for plaintiffs to have their day in court").

         Under those principles, transfer to the Southern
District of Texas is proper.  As described above, venue exists
in the Southern District of Texas pursuant to 28 U.S.C.

§ 1391(b)(1).  Personal jurisdiction is proper in that district because each Defendant is either at home in the Southern District of Texas or subject to specific personal jurisdiction there.  No party has argued that venue or personal jurisdiction is improper in the Southern District of Texas within the meaning of § 1406(a).[15]  As venue is improper and several defendants are not subject to personal jurisdiction here, there are dispositive impediments to Plaintiffs continuing their action in this Court.  Because it is in the interest of justice for Plaintiffs to have their day in court, and there are no countervailing reasons to deny transfer, the Court will transfer this case to the Southern District of Texas.  *See Porter*, 840 F.2d at 258.

### IV.  Conclusion

For the reasons stated above, the Court will grant Defendants' motion to transfer pursuant to 28 U.S.C. § 1406(a).

An appropriate order will issue.

|  | /s/ |
|---|---|
| August 4, 2016 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

---

[15]    Defendants moved for transfer to the Southern District of Texas.  (*See* Defs.' Venue Reply [Dkt. 37] at 18.)  Plaintiffs recognized that "[i]f this Court were to find venue improper here, however, it may transfer this case to Texas under 28 U.S.C. § 1406(a)."  (Pls. Mem. in Opp'n Transfer [Dkt. 47] at 5 n.1.)  Parties reiterated those positions at oral argument.