IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KRISHNA PRASAD ADHIKARI, *et al.*,  )
            )
    Plaintiffs,     )
            ) CIVIL ACTION NO.  4:16-CV-2478
  v.         )
            ) JUDGE KEITH P. ELLISON
KBR, INC., *et al.*,     )
    Defendants.   )
            )

**<u>PLAINTIFFS' MOTION FOR A CONTINUANCE UNDER FED. R. CIV. P. 56(D)</u>**

## I.  <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiffs respectfully request that this Court deny or defer considering Defendant KBR's Motion for Summary Judgment, as well as any relief the Court deems appropriate, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

Summary judgment is appropriate only when "the plaintiff has had a full opportunity to conduct discovery." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "When a party is not given a full and fair opportunity to discover information essential to its opposition to summary judgment, the limitation on discovery is reversible error." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 720 (5th Cir. 1999); *see also, e.g.*, *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 334 (5th Cir. 2002) (reversing summary judgment for defendant because district court "granted summary judgment on the grounds that there was insufficient evidence of [the defendant's] involvement in a conspiracy, precisely the type of evidence sought by [the plaintiff]").

Discovery is still underway pursuant to the parties' discovery plan. *See* Joint Discovery/Case Management Plan, Dkt. 109.  Indeed, KBR has produced only **228** new substantive documents responsive to Plaintiffs' document requests in this case so far, as shown below.  The 228 number includes many duplicates and irrelevant documents so the actual unique number is likely much lower.  Defendants have made little progress toward fulfilling Plaintiffs' requests for production, and Plaintiffs have not had an opportunity to depose any of Defendants' officers and employees.  Plaintiffs expect further discovery to reveal material evidence related to aiding and abetting, including who among Defendants' U.S.-based managers knew what and when they knew it, where certain actions were taken, and the level of control Defendants' U.S.-based managers exercised over Daoud.

In the Fifth Circuit, "Rule 56[(d)] discovery motions are 'broadly favored and should be liberally granted.'" *Raby v. Livingston*, 600 F.3d 552, 561 (quoting *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006)). Generally, the Fifth Circuit has allowed district courts to end discovery early only when the nonmovant "simply rel[ies] on vague assertions that additional discovery will produce needed, but unspecified, facts," *Raby*, 600 F.3d at 561 (quoting *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir.1980)), or "when the record shows that further discovery is not likely to produce the facts needed to withstand the motion for summary judgment," *Brown*, 311 F.3d at 333. Otherwise, the Fifth Circuit has ruled that "a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 963 (5th Cir. 2009) (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir.1991)).

Defendants' motion for summary judgment on Plaintiffs' ATS aiding-and-abetting claim is inappropriate because discovery is incomplete and Plaintiffs expect additional discovery will yield evidence showing that Defendants' domestic managers knew that Daoud was exploiting trafficked workers. Evidence of such knowledge, combined with evidence already in the record that Daoud's wrongdoing "probably would not have occurred in the same way" without Defendants' US-based assistance, would defeat Defendants' motion for summary judgment on Plaintiffs' domestic aiding-and-abetting claim. *Adhikari v. KBR, Inc. (Adhikari II)*, No. 4:16-CV-2478, 2017 WL 4237923, at *6 (S.D. Tex. Sept. 25, 2017) (quoting *Prosecutor v. Tadić*, Case No. IT-94-1-T, Trial J., ¶ 688 (Int'l Crim. Trib. May 7, 1997)).

## II.  **LEGAL STANDARD**

The court has considerable discretion to deny a summary judgment motion "if the nonmovant demonstrates an inability to support its opposition with evidence to raise a genuine

issue of material fact." *Total E&P USA, Inc. v. Marubeni Oil & Gas USA, Inc.*, 2017 WL 86875, at *1 (S.D. Tex. Jan. 10, 2017) (citing *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422 (5th Cir. 2016)).

Motions made under Fed. R. Civ. P. 56(d) for additional discovery "are broadly favored and should be liberally granted." *Id.* (citing *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422 (5th Cir. 2016); *Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)). The purpose of Rule 56(d) is "to give the nonmovant the opportunity to adequately oppose a summary judgment motion." *Peacock Carpedia Int'l Ltd.*, No. CV H-10-2273, 2012 WL 13048219, at *2 (S.D. Tex. Jan. 3, 2012) (citing *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 963 (5th Cir. 2009)).  Under Rule 56(d), the court may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d)(1)-(3).

## III.  <u>ARGUMENT</u>

### A.    **Discovery is still underway**

Discovery is still underway pursuant to the parties' Joint Discovery/Case Management Plan, Dkt. 109, (the "Discovery Plan").

#### 1.    **Document Production was Delayed due to Problems with Defendants' Document Depository**

In the Discovery Plan, Defendants represented that document production would be delayed because the U.S. Government imposed a preclearance requirement on Defendants' documents and Defendants encountered a series of setbacks in establishing a clearinghouse to meet this requirement. *Id.* at 3-4. In light of the uncertainty, the parties did not set an end date for discovery. *Id.* at 7. Likewise, the parties agreed that Plaintiffs would wait until Defendants

finished production to schedule depositions. *Id.* at 6. The parties promised "to work cooperatively and in good faith" while Defendants resolved their production issues. *Id.* at 5.

Given Defendants' representations in the Discovery Plan, the timing of their motion for summary judgment is curious: Plaintiffs patiently waited for Defendants to resolve their document production issues, Defendants' production is incomplete, and Plaintiffs have not taken any depositions.

2. ***Adhikari I* discovery is largely irrelevant to the ATS claim**:

KBR recites the volume of documents produced in *Adhikari I*, but it is undisputed that:

(1) the discovery in *Adhikari I* was served ***before Kiobel***, and was thus not focused on the new standard and did not anticipate the need for evidence regarding conduct in the United States. *See Adhikari v. Kellogg Brown & Root, Inc*., 845 F.3d 184, 214–15 (5th Cir.), cert. denied, 138 S. Ct. 134, 199 L. Ed. 2d 35 (2017) (Graves, J., concurring part and dissenting in part) ("entire summary judgment record was prepared prior to *Kiobel*"). Moreover, *Adhikari I* did not plead an aiding and abetting claim, thus ***none*** of the discovery was focused on aiding and abetting at all.

(2) the *Adhikari I* production was expressly limited to the Al Asad Air base. *E.g.,* Ex. 1, Declaration of A. Fryszman and Ex. B thereto (Letter from M. Mengis to A. Fryszman (June 24, 2010)).. The Plaintiffs here were not at Al Asad, but at Fallujah and Al Taqaddum. As a result, the Al Asad documents have limited utility here. Indeed, many of the documents produced by KBR were not particularly relevant to the claims in that case. For example, that production included 19,000 pages of laundry logs documenting every time a soldier dropped off socks or shirts at the Al Asad laundry. *Adhikari I*, Dkt. 401 at 53 n.13. These pages significantly increase the page count.

(3) In *Adhikari I*, Defendants produced electronically stored documents from only nine custodians, all of who worked primarily or exclusively overseas, with one exception. The

documents obtained from these custodians, who were not primarily U.S.-based, provides an inadequately narrow window into the U.S-based activities relevant to Plaintiffs' claims and is of limited utility in proving U.S.-based conduct and knowledge, which are the issues in the present motion.

### 3.   Adhikari II discovery is in its inception and KBR has produced only, in effect, 228 responsive documents

Plaintiffs have received just 2,870 documents, most of which are unrelated to Plaintiffs' aiding and abetting claim and are not responsive to the document requests focused on aiding and abetting liability.  Ex. 1, Fryszman Decl. ¶ 11.  For example, 806 of those documents (roughly 23,000 pages) are site reports previously produced in *Adhikari I* with the redactions related to Camp Fallujah and Al Taqaddum removed.  These reports are daily summaries of, for example, war-related violence nearby.  1,388 of the documents (roughly 10,479 pages) are internet café sign in sheets, the vast majority of which do not list any Plaintiff.  These documents were produced because they support KBR's defenses, not because they are relevant to aiding and abetting in the United States.  215 of the documents are organizational charts and 24 are maps. 159 of the documents are contracting documents, including "statements of work" and related documents on, for example, the number of forklifts and the status of various construction projects.  *Id.*  Approximately 50 documents are almost entirely redacted or withheld on privilege grounds.  *Id.*[1]  This is not a complete production.

The upshot is that only 228 substantive documents, which includes many duplicate emails, have been produced.  KBR has not yet produced documents responsive to the majority of Plaintiffs' document requests.  Ex. 1, Fryszman Decl. ¶¶ 10-16, 22-31.  Indeed, KBR has not

---

[1] KBR touts the volume of pages, but it appears that three quarters of the production by page volume consists of the sign in sheets (10,479 pages) and site reports (23,000 pages).

completed its document production even for documents it has agreed to produce.  Ex. 1, Fryszman Decl. ¶ 22.  Plaintiffs are still waiting for non-electronic documents that KBR agreed to produce that are directly relevant to their claims.  *Id*.

As for electronic documents (ESI), the meet and confer process is at its inception.  On Friday, October 25, 2019, KBR agreed to provide Plaintiffs the key words it used in its ESI search.  Ex. 1, Fryszman Decl. ¶ 24.[2]  Plaintiffs will not have the opportunity to review and discuss the key words with KBR prior to filing their summary judgment papers.

Mindful of the Court's justified impatience with discovery disputes, Plaintiffs have diligently been attempting to resolve the issues without court intervention.   The parties are continuing to meet and confer but many discovery disputes remain unresolved.  *Id*. at ¶ 24.

For example, KBR's Responses stated that KBR refused to produce documents responsive to a number of Requests, including Requests 20 and 46, by arguing that it is unable to search its non-electronic documents.  Ex. 1, Fryszman Decl.¶ 30.   Both of these Requests go to the core of the ATS claims by seeking information about knowledge in the United States (specifically seeking information on the Houston press office's handling of the many press inquiries on human trafficking) and of KBR participation in and authorization of Daoud's recruitment of laborers.  *Id*.   In addition, KBR has flatly refused to produce documents in response to, among others, Requests 17, 18, 19, 23, 24, 25, and 26.  Ex. 1, Fryszman Decl.¶ 29. These documents likewise go to the core of Plaintiffs' ATS claims.  For example, Request 17 seeks documents related to the investigations discussed in the Fifth Circuit Opinion and in

---

[2] KBR has produced documents from, according to the metadata, seven custodians – three fewer than in *Adhikari I*.  Ex. 1, Fryszman Decl. ¶ 14.  KBR informed Plaintiffs on Friday, October 25, 2019 that counsel searched the "outlook" files of the nine custodians, which does not appear to match the metadata of the production.  The parties are continuing to discuss the ESI issues.  Ex. 1, Fryszman Decl. ¶ 15.

Plaintiffs' Complaint.  *Id*.  Request 24 seeks relevant documents submitted to the United States government.  Request 26 seeks documents sufficient to identify the KBR employees who prepared the materials for submission to the United States.  The parties have been corresponding and discussing these issues by telephone, and motion practice on at least some appears likely.

On October 25, 2019, KBR informed Plaintiffs that the scope of its ESI document search was not reflected in the written responses that KBR had served.  This leaves Plaintiffs uncertain as to the relationship of the production to the document requests, and the parties agreed to continue to meet and confer on discovery issues.  Ex. 1, Fryszman Decl. ¶ 28.  Summary judgment cannot be granted based on such a paltry record, which conclusively demonstrates that Plaintiffs have not had a fair opportunity for discovery.

As KBR itself explained to the Court, "Due to factors outside of KBR's control, KBR anticipates delays in its responses to plaintiffs' discovery requests. KBR cannot currently access, search for, collect, or review data in its electronic discovery system."  Joint Discovery/Case Management Plan, Dkt. 109 at 3.  KBR provided a "brief history of the problem" and explained it was not limited to this case. *Id*.; *see also id*. at 4 (KBR has accrued a backlog of approximately 200 electronic discovery search requests in other cases. KBR estimates that working through this backlog will take months.").  Plaintiffs patiently accommodated KBR's predicament, only to face successive early summary judgment motions.

As of this filing, Defendants have not represented to Plaintiffs that they have produced all the documents they intend to produce.[3]  And even if Defendants now wish production to be

---

[3] Without acknowledging the Discovery Plan, Defendants appear to suggest that the Court should cut off discovery early solely because of the volume of documents they have already produced. Beside the fact that much of Defendants' production is duplicative and that it contains hundreds of unexplained redactions, the Federal Rules do not premise a party's

complete, that does not make it so. The documents Defendants have provided include dozens of pages of redactions. Ex. 1, Fryszman Decl. ¶ 11. Defendants included no explanation for most of these redactions. Defendants did not provide a privilege log or otherwise attempt to defend their heavy redactions until September 10, 2019, after Plaintiffs' counsel pressed the issue, and only *three days* prior to filing the present motion for summary judgment. Ex. 1, Fryszman Decl. ¶ 25. This did not leave enough time for Plaintiffs to challenge Defendants' assertion of privilege, which Plaintiffs expressly reserved the right to do in the Discovery Plan. *See* Dkt. 109 at 5. Some of the documents listed on the log appear to be directly relevant to Plaintiffs' aiding and abetting claims. For example, one document appears to be an internal survey of subcontractor recruiting practices shared with U.S.-based managers. Another document is a "compliance chart" that appears to measure compliance with General Casey's April 2006 anti-Trafficking Order (MNF-I FRAGO 06-188). Because the documents do not appear to meet the requirements of privilege, Plaintiffs asked Defendants to produce them. Ex. 1, Fryszman Decl. ¶ 25 and Ex. D thereto (Letter from A. Fryszman to G. Harrison (Oct. 24, 2019). On Friday, October 25, 2019, KBR agreed to provide a revised privilege log on or about November 8, 2019, Plaintiffs will not have the revised log until after Plaintiffs' summary judgment papers are due.

4.    **No Depositions have been taken of any of Defendants' officers or employees**

In their Rule 26 discovery plan, Plaintiffs expressly provided that they intended to take depositions of several KBR employees after documents were produced and identified those employees by name. Dkt. 109 at 6. Plaintiffs noted that "until defendants are able to produce documents from these custodians," Plaintiffs could not provide a deposition schedule. *Id*. That

---

production obligations on the mere volume of documents provided. *See* Fed. R. Civ. P. 34(a)(1)(A).

is because, as practice guides uniformly confirm, documents are necessary in order to effectively cross-examine a witness. *See, e.g.,* A.B.A. Civ. Discovery Standards (2004) at 29) ("Documents Should Be Produced Before a Deposition"); Arthur H. Aufses III, *Documents and Depositions: The Basics* 20 Litigation 49 (1994) ("documents usually are at the heart of depositions. Some depositions are taken solely to get documents and to establish their admissibility. More often, the examiner seeks substantive testimony from an adverse witness and uses documents to shape, organize, or impeach testimony.").

Because the document production is concededly incomplete, Plaintiffs have not had the opportunity to depose any of Defendants' officers or employees, who likely possess crucial information on the extent of Defendants' knowledge about Daoud's illegal actions. Defendants will likely attempt to lay the blame on Plaintiffs for failing to schedule any depositions sooner. Plaintiffs have upheld their promise to patiently wait for Defendants to resolve their production issues. With their present motion for summary judgment, Defendants are seeking to take advantage of Plaintiffs' good faith by reneging on the promises Defendants made in the Discovery Plan.

**B.      Plaintiffs expect further discovery to uncover specific material evidence**

Plaintiffs have good reason to believe there is specific material evidence in Defendants' possession that Plaintiffs do not yet have access to. First, as referenced above, Defendants produced highly redacted documents. Plaintiffs did not have enough time in the three days between when Defendants submitted their assertions of privilege and filed the present motion for summary judgment to thoroughly review and challenge Defendants' assertions of privilege. Nevertheless, it is apparent that Defendants have asserted privilege over relevant information on questionable bases.

To give just one example,[4] Defendants withheld a document that appears to be a potentially an internal survey of their subcontractors' recruitment practices, and which was shared with domestic managers. Ex. 2, KBRA2-126270. Given other evidence that it was widely known on the bases where Daoud operated that Daoud exploited trafficked workers, this survey likely documents instances of Daoud's exploitation and would thus provide direct evidence that Defendants' domestic managers knew about Daoud's human-rights violations. Apparently referencing this or a related survey,[5] Jill Pettibone, a U.S.-based KBR manager, acknowledged in an email that "there are some issues" with Daoud exploiting trafficked workers. Ex. 3, KBRA-126515. Further discovery is needed to ascertain exactly what this internal survey uncovered, who knew its contents, and when its contents became known. Moreover, because Defendants do not explain who created this survey, when it was created, or for what purpose it was created, Plaintiffs have a good-faith belief that they can successfully challenge Defendants' assertion of privilege. *See United States v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997) ("It goes without saying that documents do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer.").

Similarly, Plaintiffs need an opportunity to depose Defendants' domestic managers to ascertain exactly what they knew and when they knew it. As detailed further in Plaintiffs' brief opposing summary judgment, the evidence already available to Plaintiffs shows that Defendants' Iraq-based employees were well aware that Daoud was exploiting trafficked workers to fulfill its

---

[4] By providing only one of numerous possible examples of Defendants' failure to fulfill Plaintiffs' production requests, Plaintiffs do not waive their rights to challenge Defendants' other assertions of privilege or failures to produce required documents, or to otherwise seek further discovery.

[5] The context of this comment is not entirely clear because this email chain is also heavily redacted without explanation.

subcontracts with Defendants. Plaintiffs complained directly and repeatedly to Defendants'

employees that they were brought to Iraq against their will and forced to work there, and several

of Defendants' former employees have attested that Daoud's abuses were an open secret in Iraq.

Internal emails further show that numerous reports of Daoud's unlawful practices—from internal

whistleblowers, members of the U.S. military, and the media—made their way to Defendants'

domestic managers. With such an abundance of information about Daoud's activities making its

rounds among Defendants' employees, it is more than likely that Defendants' U.S.-based

managers learned the full details of Plaintiffs' involuntary servitude. Because much of this

information likely would not have been documented—especially if Defendants were aware of the

wrongfulness of their actions—Plaintiffs can learn it only by deposing Defendants' managers.

*See, e.g. Int'l Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257, 1266 (5th Cir. 1991); 10B Charles

Alan Wright, et al., Federal Practice and Procedure § 2730 (4th ed. 2019).

Commentators note depositions are "widely thought to be the most important step of the

formal discovery process." Subrin et al., Civil Procedure: Doctrine, Practice, and Content 350

(5th ed. 2016). Cases in this Circuit and elsewhere hold that a 56(d) continuance is appropriate

where depositions have not been taken on matters important to the motion, and especially where

the movant has taken none. *E.g. Smith v. OSF HealthCare Sys*., 933 F.3d 859, 868 (7th Cir.

2019) (holding additional discovery should have been permitted on 56(d) motion: "Counsel and

their client should not be penalized with dismissal, however, for not having taken those

depositions earlier. Depositions are expensive … it generally makes sense not to take a witness's

deposition until they have the relevant documents in hand. That's why the parties staged

discovery as they did in this case, of course, and why it would have been premature to take the

depositions before the plaintiff's deadline for responding to defendants' very early summary

judgment motion."); *Worldwide Oilfield Mach., Inc. v. Ameriforge Grp., Inc.*, No. CV H-13-3123, 2014 WL 12600527, at *2 (S.D. Tex. Sept. 4, 2014) (granting 56(d) continuance "especially given that no depositions have been taken, not even of" a matter on which summary judgment was based) (citing *Salinas v. AT & T Corp.*, No. 4:07-CV-01952, 2008 WL 8053983, at *1 (S.D. Tex. Mar. 5, 2008) (Ellison, J.)). Similarly, the Court has granted a Rule 56(d) continuance where the "Plaintiff has not yet deposed representatives of Defendant, including those involved in making the decision" that was potentially dispositive at summary judgment, partly because five months remained for discovery. *Salinas*, 2008 WL 8053983 at *1.

In addition, as discussed above relevant document discovery remains outstanding,. Ex. 1, Fryszman Decl. ¶ 12 ; *See generally* Ex. 4, Defs.' Resp. to Pls.' First Set of RPODs ("Defs. RPOD"); *supra* at 5, 6. Plaintiffs reasonably believe Defendants possess these documents given the scope of documents produced by the other Defendant, Daoud & Partners, in *Adhikari I*.[6]  The evidence sought, including documents and depositions, is material to Plaintiffs' domestic aiding-and-abetting claims. As this Court held in denying KBR's motion to dismiss, Plaintiffs' aiding-and-abetting claims can survive the ATS's territoriality requirement with "evidence that KBR's domestic personnel aided and abetted the human trafficking and forced labor that occurred abroad." *Adhikari v. KBR Inc.* (*Adhikari II*), No 4:16-CV-24782017 WL 4237923, at *6. Plaintiffs must have a fair opportunity to obtain that evidence. *Winfrey v. San Jacinto Cty.*, 481 F. App'x 969, 982 (5th Cir. 2012) ("When a party is not given a full and fair opportunity to

---

[6] For example, Daoud and Partners produced its notes of audit meetings with KBR staff that KBR did not produce records of. KBR did not produce any documents related to the at least two KBR employees who went to work for Daoud. KBR also has yet to produce any documents related to the testimony and responses it provided to Congress and various Government commissions specifically on the trafficking issues in this case. Ex. 1, Fryszman Decl. ¶ 21 & n.1; *id.* ¶ 30 & n.5.

discover information essential to its opposition to summary judgment, the limitation on

discovery is reversible error.") (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d

694, 720 (5th Cir.1999).  Here, where KBR has filed an early summary judgment motion well

before producing its own documents in full, a 56(d) continuance is particularly appropriate.  A

56(d) continuance is also particularly appropriate because the remaining evidence sought is

solely in the hands of the other party. *E.g. Culwell v. City of Fort Worth*, 468 F.3d 868, 873 &

n.4 (5th Cir. 2006).

c.    **Defendants' successive premature summary-judgment motions
represent a pattern of abusive filings**

Defendants have now filed two motions for summary judgment before fulfilling

Plaintiffs' request for production. Both motions seek to dismiss Plaintiffs' claims for lacking

evidence that is largely unknowable to Plaintiffs without a full opportunity for discovery.

Defendants' filings disregard the Discovery Plan, the spirit of Rule 26(f), and the interests of

orderly litigation. Plaintiffs are simple people from an underdeveloped part of the world; they

face enough obstacles litigating against well-resourced multinational corporations like

Defendants without these abusive filings. Plaintiffs respectfully ask the Court to enforce the

Discovery Plan and allow Plaintiffs the full and fair opportunity to present their case before

ruling on summary judgment.

**IV.  <u>CONCLUSION</u>**

For the above reasons, Plaintiffs motion should be granted.

Dated: November 1, 2019                                   Respectfully submitted,

<u>/s/ Agnieszka M. Fryszman</u>
Agnieszka M. Fryszman
Attorney in charge, *pro hac vice*

13

**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afryszman@cohenmilstein.com

Paul L. Hoffman (*pro hac vice*)
**SCHONBRUN SEPLOW HARRIS & HOFFMAN L.L.P.**
1543 W. Olympic Blvd.
Los Angeles, CA 90064
Tel: (310) 396-0731
Fax: (310) 396-7040
hoffpaul@aol.com

*Counsel for Plaintiffs*