**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

KRISHNA PRASAD ADHIKARI, *et al.*,    )
                                       )
                    Plaintiffs,        )      Civil Action No.:  4:16-CV-2478
                                       )
vs.                                    )      Judge Keith P. Ellison
                                       )
KBR, INC., *et al.*,                   )
                                       )
                    Defendants.        )
                                       )
                                       )
_____)

**PLAINTIFFS' MOTION FOR SANCTIONS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(e)**

# <u>TABLE OF CONTENTS</u>

I. BACKGROUND ............................................................................................................. 2

    A.    KBR was on Notice that it Should Preserve Documents ...................................... 3

    B.    As This Court Already Found, KBR "Chose" to Make "Critically
    Important" ESI Unavailable .............................................................................. 3

    C.    Depositions Have Revealed Even Further Issues with KBR's Production............ 5

        1.    The deponents testified that KBR did not instruct them to preserve
        documents ........................................................................................ 5

        2.    The deponents testified that KBR did not ask them to collect or
        produce relevant documents and relevant documents are
        demonstrably missing ........................................................................ 5

        3.    Documents from press office not preserved or produced ......................... 7

    D.    Documents Were Critical to Each Deponents' Recollection .............................. 8

        1.    The deponents did not remember events from nearly 20 years ago .......... 8

        2.    The witnesses relied upon their review of documents selected by
        counsel to refresh their recollection ................................................... 9

        3.    In the absence of documents to refresh their recollection, the
        deponents could not recall basic facts or key events .......................... 10

    E.    Testimony Revealed Other Witnesses Whose Documents Are Also
    Unavailable .................................................................................................. 11

II. LEGAL STANDARD ................................................................................................... 13

III. Argument .................................................................................................................... 13

    A.    Rule 37(e)....................................................................................................... 13

        1.    The predicate requirements of Rule 37 are met ................................. 15

        2.    Plaintiffs are prejudiced, making a remedy under Rule 37(e)(1)
        necessary ....................................................................................... 17

        3.    The requirements of 37(e)(2) are met ................................................ 21

    B.    Inherent Power ............................................................................................... 24

    C.    Costs and Fees ............................................................................................... 25

IV. CONCLUSION ............................................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*4DD Holdings v. U.S.*,
143 Fed. Cl. 118 (Fed. Cl. 2019) ......................................................................16, 18, 19, 20

*In Re Actos (Pioglitazone) Prods. Liability Litig.*,
2014 WL 2872299 (W.D. La. 2014) .........................................................................................23

*Ala. Aircraft Indus. v. Boeing*,
319 F.R.D. 730 (N.D. Ala. 2017) ...............................................................................21, 23, 25

*Ameriwood Indus., Inc. v. Liberman*,
2007 WL 5110313 (E.D. Mo. 2007) ........................................................................................24

*Arista Recs., L.L.C. v. Tschirhart*,
241 F.R.D. 462 (W.D. Tex. 2006) ............................................................................................24

*Arya Risk Mgmt. Sys. v. Dufossat Cap. P.R., LLC*,
2021 WL 1554336 (S.D. Tex. 2021) ........................................................................................24

*Ashton v. Knight Transp., Inc.*,
772 F.Supp.2d 772 (N.D. Tex. 2011) .......................................................................................25

*Bellamy v. Walmart Stores, Tex., LLC*
2019 WL 3936992 (W.D. Tex. 2019) ........................................................................................20

*Borum v. Brentwood Vill., LLC*,
332 F.R.D. 38 (D.D.C. 2019) ...................................................................................................25

*Commc'ns Ctr., Inc. v. Hewitt*,
2005 WL 3277983 (E.D. Cal. 2005) ........................................................................................24

*Consol. Aluminum Corp. v. Alcoa, Inc.*,
244 F.R.D. 335 (M.D. La. 2006) ..............................................................................................15

*DR Distributors v. 21 Century Smoking Gun*,
513 F.Supp.3d 839 (N.D. Ill. 2021) ............................................................................16, 18, 20

*E\*Trade Sec. LLC v. Deutsche Bank AG*,
230 F.R.D. 582 (D. Minn. 2005) ................................................................................18, 23, 24

*Edwards v. 4JL*,
2018 WL 2981154 (S.D. Texas 2018) ..........................................................................16, 17, 19

*Edwards v. Junior State of Am. Found.*,
  2021 WL 1600282 (E.D. Tex. 2021) ..........................................................15, 19, 20

*Emerick v. Fenick Indus.*,
  539 F.2d 1379 (5th Cir. 1979) ..........................................................................13, 15

*Evenson v. Johnson Bros. Liquor Co.*,
  2020 WL 12948541 (D. Minn. 2020) ................................................................19, 23

*Freidig v. Target Corp.*,
  329 F.R.D. 199 (W.D. Wis. 2018) ...........................................................................20

*FTC v. Vyera Pharms.*,
  2021 WL 2201282 (S.D.N.Y. 2021) .........................................................................19

*Gutman v. Klein*,
  2008 WL 4682208 (E.D.N.Y. 2008) .........................................................................24

*Guzman v. Jones*,
  804 F.3d 707 (5th Cir. 2015) ...................................................................................15

*McQueen v. Aramark Corp.*,
  2016 WL 6988820 (D. Utah 2016) .....................................................................19, 25

*Moody v. CSX Transportation*,
  271 F.Supp.3d 410 (W.D.N.Y. 2017) ...........................................................17, 20, 21

*Nationwide Life Ins. Co. v. Betzer*,
  2019 WL 5700288 (M.D. Fla. 2019) .........................................................................25

*Nat'l Hockey League v. Metro. Hockey Club*,
  427 U.S. 639 (1976) .................................................................................................14

*Paisley Park Enters. v. Boxill*,
  330 F.R.D. 226 (D. Minn. 2019)......................................................15, 17, 19, 23

*Philips Elecs. N. Am. Corp. v. BC Tech.*,
  773 F.Supp.2d 1149 (D. Utah 2011)........................................................................24

*Quantlab Techs. Ltd. (BGI) v. Godlevsky*,
  2014 WL 651944 (S.D. Tex. 2014) .....................................................................13, 25

*Rattray v. Woodbury County*,
  761 F.Supp.2d 836 (N.D. Iowa 2010)......................................................................23

*Richard v. Inland Dredging Co. LLC*,
  2016 WL 5477750 (W.D. La. 2016)..........................................................................18

*Rimkus Consulting Grp., Inc. v. Cammarata*,
    688 F.Supp.2d 598 (S.D. Tex. 2010) .......................................................21, 22, 25

*Ringers Techs. LLC v. Harmer*,
    2020 WL 6385813 (S.D. Tex. 2020) .............................................................19, 21

*Schmalz v. Village of N. Riverside*,
    2018 WL 1704109 (N.D. Ill. 2018) ......................................................................19

*Seaman v. Hacker Hauling*,
    840 F.Supp.2d 1106 (N.D. Iowa 2011)...............................................................23

*In re Skanska*,
    2021 WL 5226547 (N.D. Fla. 2021)...........................................16, 18, 19, 21

*Stevenson v. Union Pac. R.R.*,
    354 F.3d 739 (8th Cir. 2004) ...............................................................................23

*Taylor v. Mitre Corp.*,
    2012 WL 5473715 (E.D. Va. 2012)............................................................18, 23, 24

*TLS Mgmt. & Mkt. Servs v. Rodriquez-Toledo*,
    2017 WL 1155743 (D.P.R. 2017)..........................................................................23

*Villalon v. Cameron County*,
    2017 U.S. Dist. LEXIS 222483 (S.D. Tex. 2017) ..........................................20, 24

*Williford v. Carnival Corp.*,
    2019 WL 2269155 (S.D. Fla. 2019) .....................................................................20

*Zubulake v. UBS Warburg, LLC*,
    220 F.R.D. 212 (S.D.N.Y. 2003) .....................................................................15, 16

*Zubulake v. UBS Warburg, LLC*,
    229 F.R.D. 422 (S.D.N.Y. 2004*)* .....................................................................16, 17

**Other Authorities**

Federal R. Civ. P. 26 .................................................................................... *passim*

Federal R. Civ. P. 37 .................................................................................... *passim*

Federal R. Civ. P. 56 .........................................................................................4

This motion seeks relief under Federal Rule of Civil Procedure 37 for KBR's massive discovery failures. Last year, this Court found that KBR, through its intentional and unilateral actions, knowingly made "critically important" electronically stored information unavailable for discovery. Dkt. 207 at 2. As the Court ruled at the time, KBR's actions were "unacceptable in any circumstances, but particularly so in light of the heightened importance we face here: plaintiffs who allege they were trafficked across various international borders to provide forced labor at U.S. military bases in Iraq." *Id.* The Court initially ordered KBR to reconstruct a facility at the estimated expense of $1.7 million that would effectively allow KBR to recover the missing information. After extensive briefing and multiple hearings, the Court declined KBR's request to vacate that order, though it suspended relief while the parties took depositions.

Plaintiffs have now deposed seven current or former defendant employees. These depositions have confirmed almost all of Plaintiffs' allegations, but they have also revealed discrete evidentiary gaps that show the extent that KBR's discovery misconduct has prejudiced Plaintiffs. Each deponent has struggled to remember details without the guide of documents. The three deponents whose documents (because of KBR's misconduct) are unavailable could not remember key facts. Moreover, these depositions have revealed the identity of further important document custodians whose identity Plaintiffs had no prior way of knowing or whose importance Plaintiffs previously had no reasonable way of appreciating. Because of KBR's conduct, Plaintiffs cannot obtain document discovery from these recently revealed witnesses.

What is more, the depositions revealed additional discovery failures that further prejudiced Plaintiffs. For example, each deponent, including KBR's handpicked Rule 26 witnesses, has testified that no one from KBR asked them to preserve documents or contacted them for help searching for relevant documents. In addition, KBR's documents from the relevant

period from each press-office custodian Plaintiffs identified appear to have been destroyed, although they should have preserved.

Plaintiffs' experience with depositions shows that Plaintiffs are entitled to relief for KBR's discovery misconduct, as the Court ordered in 2021. Unfortunately, as KBR has said it will take at least two years to comply with the Court's prior order, Plaintiffs move now to ask the Court to consider alternative relief under Rule 37. As numerous courts have found when faced with similarly pervasive and intentional ESI destruction, sanctions under Rule 37(e)(2), including striking KBR's answer and entering default, are appropriate. At the very least, the Court should provide Plaintiffs relief under Rule 37(e)(1), which was amended in 2015 to allow courts to cure prejudice from a party's loss of ESI, regardless of whether the ESI was intentionally destroyed. In Part III.B.1 *infra*, Plaintiffs propose facts to which the Court should order KBR to stipulate as a remedy. The Court should also award Plaintiffs attorney fees for the extensive time counsel have had to spend litigating and trying to remedy KBR's missing ESI. Plaintiffs met and conferred with counsel for KBR, who stated KBR opposes this motion.

## I.  **BACKGROUND**

On March 10, 2021, this Court ordered KBR to reconstitute its ESI database,[1] which KBR wrongfully shuttered in the midst of document discovery, so that KBR could meet its discovery obligation to produce ESI that the Court recognized as "critical" ESI. On August 3,

---

[1] Plaintiffs use the term "database" for convenience. For the full background of this dispute and the technical explanation for KBR's missing ESI, see Plaintiffs' Motion to Compel, Dkt. 191. To briefly summarize, the government ordered KBR to sequester its LOGCAP III ESI because the government was dissatisfied with KBR's response to a so-called data spill – i.e., an improper mixing of classified and nonclassified data. KBR was required to "clean" the ESI of classified its information, using approved processes. KBR established a facility capable of doing so, but then voluntarily chose to shutter the facility in January 2019 before the lease expired and with discovery ongoing in this case, making KBR uncapable of producing ESI thereafter unless it had been previously "cleaned" for this or other litigation.

2021, this Court denied KBR's motion for reconsideration of its Order compelling KBR to produce the missing ESI, but at the same time, the Court suspended relief and suggested parties begin depositions. Ex. 1 at 51:19-52:1. So far, Plaintiffs have deposed seven witnesses – four whose documents were produced (all KBR employees who have previously testified on behalf of KBR in other LOGCAP-related litigation and who are on KBR's witness list) and three witnesses selected by Plaintiffs whose documents were not preserved.[2] These depositions have revealed the prejudice KBR's effective destruction of its database has caused Plaintiffs as well as additional failures in KBR's document preservation and production.

## A.    KBR was on Notice that it Should Preserve Documents

This Court has already found that KBR was plainly on notice that it was obligated to preserve documents in 2009, when the *Adhikari I* Plaintiffs filed their claims. Dkt. 207 at 2. Indeed, Plaintiffs sent KBR a preservation letter on March 25, 2009, asking KBR to preserve relevant documents, including documents related to the recruitment of laborers, communications related to human trafficking and documents related to government investigations into trafficking. Ex. 2 at 2. KBR claimed privilege over information related to document preservation—including whether it instructed employees to preserve or locate documents—leaving Plaintiffs with no way to confirm whether KBR took any steps to preserve evidence. Ex. 3.

## B.    As This Court Already Found, KBR "Chose" to Make "Critically Important" ESI Unavailable

This Court has already found that KBR intentionally and wrongfully failed to preserve "critically important" ESI. Dkt. 207 at 2; *supra* n.1. At the time it effectively decommissioned its database, KBR had not produced ***any*** ESI to Plaintiffs and knew that Plaintiffs were waiting for

---

[2] Plaintiffs hoped to depose William Jonas, whose "critical" ESI is also sequestered, before filing this motion, but KBR has said Mr. Jonas is not available until mid-April.

documents. Dkt. 191 at 18. KBR did not produce its ESI until six months after it closed its database, ensuring Plaintiffs did not have the opportunity to follow up on deficiencies in its production. KBR also did not reveal its final list of document custodians to Plaintiffs until after it terminated the database. *See id.* 4-5. When Plaintiffs finally saw the list, they learned that it contained only nine custodians—including all seven of the witnesses KBR had previously selected as its ***own*** Rule 26 witnesses—but only one individual Plaintiffs listed in the parties Joint Discovery Plan (whom, as it happens, KBR had also selected as a witness).

Significantly, before decommissioning its database, KBR cleaned and preserved ESI for ___**80**___ additional individuals for production in other, unrelated, litigation—but not the comparatively few "critically important" custodians identified by Plaintiffs in their Joint Discovery Plan, by this Court, or in the Court of Appeals opinion. Dkt. 207 at 2.[3]  This Court found that Plaintiffs "raised the centrality of at least two of the custodians early on and repeatedly" and KBR was on notice of their "relevance and materiality" since the *Adhikari I* litigation.[4] After two rounds of briefing and a hearing, this Court agreed that KBR knew the ESI it failed to clean was important to this litigation and that KBR nevertheless "*chose* to make this discovery production as expensive as it has become." Dkt. 207 at 2 (emphasis in original). As the Court explained: "If the Court were to deny Plaintiffs' Motion, it [would] have established a principle that a party may

---

[3] Among the critically important custodians whose ESI KBR failed to preserve are two of the four custodians that Plaintiffs identified in the Joint Discovery Plan, Dkt. 109 at ¶ 9(D) at the inception of this case. KBR preserved the ESI of one of those four custodians, Charlie Carr, for unrelated litigation but initially failed to produce his ESI this case. KBR only revealed that it had preserved his ESI in 2020, after Plaintiffs prevailed on their Rule 56(d) motion. KBR did not provide Plaintiffs its full list of the 80 other custodians with cleaned ESI until after the Court granted Plaintiffs' motion to compel in 2021, despite Plaintiffs' earlier and repeated requests.

[4] Plaintiffs will refrain from repeating here the extensive background that precipitated their motion to compel. More information can be found in Plaintiffs' briefing on the motion, Dkts. 191, 198, 202, and the Court's order granting Plaintiffs' motion, Dkt. 207.

gain an advantage in litigation by making discoverable documents inaccessible. Such a principle is unacceptable in any circumstances . . . ." *Id.*

## C.   Depositions Have Revealed Even Further Issues with KBR's Production

In the months since the Court denied KBR's motion to reconsider the Court's March 10, 2021, order, Plaintiffs have taken depositions of witnesses both with and without documents. These depositions have revealed further issues with KBR's production.

1.   The deponents testified that KBR did not instruct them to preserve documents

***All*** of the relevant deponents testified that KBR did ***not*** ask them to preserve documents in this case. Ex. 4 at 127:7-15; Ex. 5 at 38:6-18; Ex. 6 at 42:6-24; Ex. 7 at 55:5-19; Ex. 8 at 160:17-161:3; Ex. 9 at 198:2-9. Not only that, but Mr. Norman testified that he did indeed delete files. Ex. 6 at 41:20-21; 42:14-20; 43:17-25. Plaintiffs have sought discovery on KBR's document preservation effort, but KBR has refused to produce any documents demonstrating the steps it took to preserve evidence in this case. Ex. 3.

2.   The deponents testified that KBR did not ask them to collect or produce relevant documents and relevant documents are demonstrably missing

***All*** of the relevant deponents testified that they were ***not*** asked to collect or produce documents or even to assist in locating relevant documents. Ex. 4 at 127:7-19; Ex. 10 at 32:4-6; Ex. 6 at 41:1-5; Ex. 5 at 38:6-18; Ex. 7 at 55:11-19; Ex. 8 at 160:11-161:3; Ex. 9 at 198:10-199:3. For example, Ms. Wade testified that her files were saved to a shared drive and confirmed that KBR did not approach her about locating responsive documents. Ex. 5 at 37:2-38:18. Notably, Ms. Wade testified that the relevant "Task Orders" (the specific contracts under LOGCAP III), which KBR had not produced at the time of the deposition, were on her shared drive. *Id.* 53:7-15. The Task Orders were plainly responsive to Plaintiffs' document requests. Ex. 11 at Request 7. With time and effort, Plaintiffs located portions of the relevant Task Order (for a

cost) within PACER filings from other litigation after Ms. Wade described it at her deposition and have since been able to use it as an exhibit at other depositions. *E.g.*, Ex. 8 at 258:8-259:25. The provisions of the Task Order are directly relevant to Plaintiffs' claims and to KBR's liability for the conduct of its subcontractor. *See id.*; *see also* Ex. 9 at 123:2-24 ("Basically this paragraph states we will make sure that our subcontractor employees follow rules, laws, et cetera . . . Not just to [Trafficking in Persons], but other topics as well."). This plainly relevant document should have been, but was not, produced from Ms. Wade's files.

Mr. Hill testified that he created and saved several types of documents on his laptop. Ex. 8 at 70:1-71:9; 73:1-74:2. For example, Mr. Hill testified that he wrote something akin to a regular newspaper column. *Id*. 70:15-23. But despite being one of KBR's initial nine handpicked custodians, KBR produced only ***seven*** documents from Hill's custodial files and ***none*** of them even appear to be documents from Mr. Hill (and none are the documents described by Mr. Hill). Ex. 12 at ¶ 3. Six of these documents are email chains from June, July, and September of 2007 (after the Plaintiffs all returned to Nepal), and Mr. Hill is not listed as an author or recipient in any of them. *Id.* at ¶¶ 4-5 The seventh is a widely circulated training memorandum. *Id.* at ¶ 6

That KBR did not produce documents from Mr. Hill's files does not mean Mr. Hill never had relevant and responsive documents from his files. Quite to the contrary, a search of KBR's production from other custodians for the name "Robert Hill" returns 1,400 results. Ex. 12 at ¶ 7. Hundreds of documents produced from other custodians are email chains that Mr. Hill appears on but were ***not*** produced from Mr. Hill's custodial files indicating the production from his files was grossly incomplete. *Id.* For example, this means, email chains that Mr. Hill was on without another existing custodian were not produced and are presumably destroyed. It is impossible to know how many emails he sent to persons who are not custodians in this case, or what other

documents are missing from his files. Further, some of Mr. Hill's emails were produced from Remo Butler's custodial file, which was searched in 2021, well *after* KBR searched and produced documents from Mr. Hill's file using identical search terms. *E.g.*, Ex. 13. If these emails had been properly preserved in Mr. Hill's files, KBR would have produced them in 2020, when it completed production from Mr. Hill. But it did not.

Cheryl Ritondale, another one of KBR's Rule 26 witnesses, appears to be missing documents too. At her deposition, Ms. Ritondale testified that she engaged in extensive preparation for her 2010 testimony before the Commission on Wartime Contracting, yet no documents relating to that preparation were produced (nor did KBR appear to list them as withheld on any privilege log). In particular, Ms. Ritondale testified that KBR submitted a written follow-up to her testimony specifically addressing trafficking allegations against Daoud & Partners and KBR's continued relationship with Daoud. This submission did not turn up in KBR's production from Ms. Ritondale's files, although it was squarely covered by the Plaintiffs' Requests for Production, Ex. 11 at Request 24, and the parties' agreed-upon search terms specifically targeting documents related to Daoud almost certainly would have hit on this submission. Plaintiffs have been unable to locate a publicly available copy of this submission.

3.    Documents from press office not preserved or produced

In 2020, this Court recognized that KBR's press office documents were crucial, holding Plaintiffs require "documents from the Houston-based press office to demonstrate that KBR's domestic managers were knowledgeable about the alleged trafficking and forced labor violations and yet sought to 'cover it up.'" Dkt. 156 at 6-7. This Court concluded that "[s]uch evidence of concealment is directly relevant to whether Plaintiffs are entitled to equitable tolling." *Id.*

At least one press office witness, Melissa Norcross, was listed by Plaintiffs on their initial Rule 26 disclosures back in April 2018. Plaintiffs also expressly requested documents relating to

relevant "questions, inquiries, or requests from the media." Ex. 11 at Request 20. But no press office custodians from the relevant time period were preserved by KBR. KBR eventually produced 26 documents from Heather Browne, a communications director, but all postdate Plaintiffs' time in Iraq. Dkt. 266-17 at ¶ 6, 8.

KBR informed Plaintiffs that it had no documents related to any press custodians as the press function was housed at Halliburton. Ex. 14. KBR could have and should have invoked its right to obtain those documents from Halliburton pursuant to Section 8.4(a)(ii) of the companies' Separation Agreement, Ex. 15, and should have ensured these documents were preserved. Under Halliburton's Shared Services Retention Schedule, communications office documents are preserved for seven years, meaning the documents would have been preserved at the time the *Adhikari I* complaint was filed. Ex. 16 at 2. Nonetheless, KBR failed to seek evidence from Halliburton after being put on notice by *Adhikari I*. Instead, in April 2020, KBR informed Plaintiffs that Halliburton would not produce documents, forcing Plaintiffs to subpoena Halliburton. Ex. 17. Unfortunately, by then, the relevant documents were not located. Ex. 18.

But more importantly, in her deposition Ms. Mingo disclosed that she (and the other early press office staff) had worked for KBR, not Halliburton. Ex 10. at 22:23-25; 24:8-12. Those KBR press office documents should have been saved by KBR but were not produced and have presumably been destroyed, as KBR is unable to locate them. Ex. 12 at ¶¶ 8-10; Ex. 19.

**D.     Documents Were Critical to Each Deponents' Recollection**

1.     The deponents did not remember events from nearly 20 years ago

The events in this case occurred between 2004 and 2007, almost 20 years ago. As a result, it is not surprising that witnesses struggled to remember key facts. Indeed, each deponent repeatedly pointed to the long lapse in time as the reason they could not recall specific facts. *See, e.g.* Ex. 5 at 28:12-14 ("I mean, again, you're asking me about stuff that was 15 years ago."); *see*

*also* Ex. 4 at 29:17-18 ("I can't remember. It was a long time ago."); Ex. 10 at 90:25-91:3, ("It's

been so long, I -- I don't recall a specific name or names."); 108:6-11 ("Q. And given that three

to five people, can you just take a minute and rack your brain and think about what their names

might have been? A. I -- I could take an hour and my -- my memory's not going to get any better,

I'm afraid."); Ex. 6 at 75:5-11 ("Q. Do you recall whether Ms. Pettibone ever asked you to

investigate Mr. Banks? A. I do not. Q. Do you recall whether or not you ever reported on the

results of an investigation of Mr. Banks to Ms. Pettibone? A. I do not."); Ex. 9 at 136:12-17 ("I

don't recall what I did with this e-mail once I received it. It was 16, 18 years ago, almost. . . . ").

> 2.    The witnesses relied upon their review of documents selected by counsel to
>        refresh their recollection

The witnesses typically relied almost entirely upon their review of the documents

selected by counsel to refresh their recollection. Ms. Wade's testimony was typical:

> Q:    I'm asking whether you remember anything to do with third-country
>        nationals in Iraq. Do you remember that ever coming up in the course of
>        your employment from 2004 to 2008?
> A:    Not until looking at documents the last couple of days.
> Q:    So your recollection right now is entirely based on the documents that you
>        reviewed. Is that your testimony?
> A:    Yes.

Ex. 5 at 29:16-25; *see also, e.g.*, *id.* 45:17- 46:21 ("Q: Ms. Wade, do you remember hearing

allegations that third-country nationals were promised jobs in one country, for example, Kuwait

or Jordan, but then brought, instead, to US military bases in Iraq? A: Not until looking at

documents yesterday …. Q: And when you say paperwork yesterday, those are the documents

you reviewed with counsel; is that right? A: That is correct"). The other witnesses similarly

relied upon the documents to refresh their recollection:

> Q.    Okay. At that time did you hear any reports that third-country nationals
>        were promised jobs in Jordan or Kuwait, for example, [but instead]
>        brought to Iraq?
> A.    I read that in the documentation review.

| Q. | So you read that yesterday when you went over documents with counsel? |
|---|---|
| A. | Yes. I don't have personal recollection of that, but I saw it in the documents. |
| Q. | And did you hear the reports that third-country nationals couldn't quit their jobs and leave when they wanted to leave? |
| A. | I -- yes, I saw that there were inquiries regarding that. Yes. |
| Q. | And, again, that's something you saw during your review of documents with counsel? |
| A. | Yes, ma'am. |
| Q. | It's not something you independently recall from -- from the time? |
| A. | That is correct. I do not independently recall that. |

Ex. 10 at 48:23-50:21.

Harold Norman, KBR's investigator, testified similarly, emphasizing that seeing his own written reports would help refresh his recollection: "I don't have a specific memory. But if there's some documents or something that indicate that I did…" Ex. 6 at 76:4-6. Specifically, Mr. Norman testified that reviewing other witnesses' e-mails did not refresh his recollection, *but that seeing his own written report would*:

| Q: | It's fair to say that given the passage of time that you don't have an independent recollection beyond what's in this e-mail? |
|---|---|
| A: | No, I don't. If I have a report somewhere, I can look at it and -- that would be great. *If I have my own report*, I can tell you if I recognize it or not and remember. |
| Q: | Uh-huh. Okay. This doesn't help you remember Colonel Huston at all, does it? |
| A: | Quite honestly, no. |

*Id.* 89:8-17 (emphasis added).

3. In the absence of documents to refresh their recollection, the deponents could not recall basic facts or key events

Where deponents lacked the documents they needed to refresh their recollection, they could not recall key events or remember basic facts. For example, whether or not KBR knew of allegations that third country nationals were victims of human trafficking is at issue. After reviewing documents produced from the files of other employees, Ms. Mingo was able to recall that she had received reports alleging that KBR's subcontractors were holding workers'

10

passports in order to keep them on the job. Ex. 10 at 49:7-15. Ms. Mingo testified she would forward those reports and similar reports to her "network." *Id.* 26-30. The network included individuals in the C-Suite in addition to her boss in the press office. *Id.*30:15-17. Ms. Mingo also testified that she sometimes attended meetings regarding the news reports. *Id.* 30:25-31:2. Ms. Mingo could not, however, recall the names of any person at the meetings or to whom she forwarded the reports (other than her boss, Ms. Viktorin). *Id.* 30:13-14 ("Q: Who is the network of people? A: I don't recall."). Ms. Mingo's documents, including her correspondence forwarding the reports were not preserved or produced.

Ms. Hall's documents likewise were not preserved or produced. Ms. Hall recalled allegations of human trafficking against KBR based on her review of documents produced from other custodian files but "did not recall that previously." Ex. 4 at 47:24 – 48:5. She testified that when she received those reports, she would turn to a "subject matter expert" for help in responding, but she did not recall the names of any of those persons. *Id.* 49:10-22.

Ms. Hall testified she "did not recall" to approximately 150 questions. Ms. Hall did not recall if she circulated the news reports to anyone else at KBR. *Id.* 52:14-19. Ms. Hall recalled that she interacted with the Government relations office at KBR but did not recall the name of anyone who worked there. *Id.* 60:12-25. She also did not recall what she worked on with that office: "I don't recall details." *Id.* 60:23-25. Ms. Hall recalled that she had a staff of 50 or 60 people and recalled a handful of names – names that were different than the names previously disclosed by KBR's counsel. *Id.* 27:4-10, 30:17-24. Where she had a document in front of her, however, Ms. Hall was more able to answer Plaintiffs' questions. *E.g.*, Ex. 4 at 102:8-103:2.

## E.    Testimony Revealed Other Witnesses Whose Documents Are Also Unavailable

The testimony provided so far revealed additional witnesses, not previously disclosed by KBR, and whose documents are also unavailable. For example, KBR's former investigator,

Harold Norman, testified that he and his fellow investigators reported to someone named Ken

Weisman. Ex. 6 at 25:11-18, 27:1-4, 12-21. This is the first time the name Ken Weisman has

been made known to Plaintiffs. KBR did not mention him in its Rule 26 disclosures, its

interrogatory responses, or any informal discussions about document custodians. *E.g.*, Ex. 20 at

4-5 (declining to identify any investigators). Plaintiffs' prior understanding from a declaration

KBR submitted was that William "Chip" Rice was in charge of LOGCAP III investigations. Dkt.

167-2 ¶ 1,7. But Mr. Norman testified that he had no recollection of Mr. Rice. *Id.* 26:6-7. Mr.

Weisman's documents were not produced. Deponent Robert Hill identified two other

investigators, Burt Ward and Mr. Conchlan, who were also not previously identified by KBR and

whose documents were not produced. Ex. 6 at 154:13-156:8.

Likewise, deponent David Stallard identified Doug Horn and Steve Gulyas as relevant

Houston-based KBR managers to whom he and Iraq-based project manager Robert Hill reported.

Ex. 7 at 41:4-21. Mr. Stallard described Mr. Horn as a "principal primary lead" in Houston and

identified Mr. Gulyas as Mr. Horn's chief of staff. *Id.* 41:16-21. Mr. Hill likewise testified that

his communications were sent in a "stovepipe" fashion, from the Iraqi bases to Baghdad and then

to Houston. Ex. 8 at 57:3-23 ("there was a group of guys out of Houston whose names I  -- I

really can't recall"); *id.* 188:15-189:17. Mr. Hill also testified that he received trafficking-related

allegations from chaplains and U.S. military personnel, "and then had my people, [Chuck

Hazzard] go down and talk to him, and, you know, kind of put that whole thing to a kibosh." *Id.*

151:1-5. Mr. Hill testified that he reported the trafficking allegations to his supervisors. *Id.*

151:18-23. KBR internal documents suggest that Mr. Horn and Mr. Gulyas both received

trafficking-related allegations at various points in time. Dkt. 266-17 at ¶¶ 16, 28.

These potential witnesses are relevant to both Plaintiffs' subject matter jurisdiction argument and merits but were not disclosed until the recent depositions. Discovery of their documents is impossible because KBR decommissioned its database before any follow-up discovery could be served.

## II.  LEGAL STANDARD

This Court has discretion to fashion a remedy for discovery abuses, including the destruction of electronically stored information ("ESI"), pursuant to Federal Rule of Civil Procedure 37 and the court's inherent power to regulate the judicial process. *Emerick v. Fenick Indus.*, 539 F.2d 1379, 1381 (5th Cir. 1979) (holding "It is not our responsibility as a reviewing court to say whether we would have chosen a more moderate sanction" and noting the Supreme Court has "emphasized the deterrent aspect" of Rule 37 sanctions).

## III.  ARGUMENT

As this Court has previously explained, courts "have a right to expect that litigants and counsel will take the necessary steps to ensure that relevant records are preserved when litigation is reasonably anticipated, and that such records are collected, reviewed, and produced to the opposing party." *Quantlab Techs. Ltd. (BGI) v. Godlevsky*, 2014 WL 651944, at *7 (S.D. Tex. 2014) (Ellison, J.) (internal citation omitted). This Court has also already found that KBR made relevant information inaccessible by effectively decommissioning its database. Dkt 207. The Court explained that KBR's conduct sought to "establish a principle that a party may gain an advantage in litigation by making discoverable documents inaccessible. Such a principle is unacceptable in any circumstances." *Id.* 2.

A.     **Rule 37(e)**

Federal Rule Civil Procedure 37 was recently amended to address the problem of electronically stored information being lost without bad faith (in (e)(1) as amended) and,

13

separately (in (e)(2) as amended), with the intent to deprive another party's use of the information. The Rule applies when electronically stored information "should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

Under Rule 37(e)(1), even if a party did not act intentionally, where information is lost and a court finds prejudice to another party from the loss of information, the court "may order measures no greater than necessary to cure the prejudice." The Advisory Committee notes explain that the "range of such measures is quite broad … Much is entrusted to the court's discretion." Advisory Committee Notes to 2015 Amendment. The notes provide examples of curative measures, including "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." *Id*.

Under Rule 37(e)(2), whether or not another party is prejudiced, if a "party acted with the intent to deprive another party of the information's use in the litigation," the sanctions are more severe, allowing the court to: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."

In this case, KBR intentionally flouted its discovery obligations and disabled its document database in the midst of discovery. Corrective action is necessary. *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976) (goal is "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be

tempted to such conduct in the absence of such a deterrent"); *Emerick*, 539 F.2d at 1381.

1.    The predicate requirements of Rule 37 are met

It cannot reasonably be disputed that the electronic information in this case (i) should have been preserved, (ii) is lost because KBR failed to take reasonable steps to preserve it, and (iii) cannot reasonably be restored or replaced. Fed. R. Civ. P. 37(e).

a.    The ESI should have been preserved

It is undisputed that the ESI in this case should have been preserved. Indeed, this Court has already found that KBR was plainly under an obligation to preserve evidence. *Supra* Pt. I.A.; Dkt. 207 at 2. That is because the duty to preserve generally attaches when litigation is contemplated. *E.g.*, *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). The duty to preserve continues throughout the litigation. *See, e.g., Edwards v. Junior State of Am. Found.*, 2021 WL 1600282, at *9 (E.D. Tex. 2021); *Paisley Park Enters. v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019) (destruction of ESI "is even more egregious because litigation had already commenced").

b.    ESI was lost because KBR failed to take reasonable steps to preserve it

It cannot be disputed that ESI was lost because KBR failed to take reasonable steps to preserve it. KBR is an experienced and sophisticated litigant and undoubtedly understands the importance of carefully preserving ESI.

Here, every single relevant deponent has testified that they were ***not*** instructed to preserve documents related to this case. *Supra* Pt. I.C.1. Courts uniformly find that parties have a threshold duty to ensure a litigation hold is put in place. *E.g.*, *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 341 (M.D. La. 2006) (duty to preserve emails sent and received by a "key player"); *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (parties are required to "put in place a 'litigation hold'"). Failure to do so is unreasonable, and courts have sanctioned parties for failure to issue a litigation hold and for failing to ensure that employees

15

understood the scope of the hold or for failing to monitor compliance. *4DD Holdings v. U.S.*, 143 Fed. Cl. 118, 132 (Fed. Cl. 2019); *In re Skanska,* 2021 WL 5226547, at *7 (N.D. Fla. 2021). In addition, every relevant deponent so far has testified that KBR did ***not*** ask them to collect or produce relevant documents. *Supra* Pt. I.C.2. It is apparent from the testimony and from a review of the metadata in the existing production that relevant documents are missing. *Id.* (discussing documents missing from the production of Robert Hill and Cheryl Ritondale). As the court found in the seminal *Zubulake* decision, "it is not sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information. Counsel must take affirmative steps to monitor compliance … counsel and client must take some reasonable steps to see that sources of relevant information are located." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004*); see also, e.g., DR Distributors v. 21 Century Smoking Gun,* 513 F. Supp. 3d 839, 963 (N.D. Ill. 2021) ("with regard to ESI, reasonable inquiry necessitates a proper custodian interview … And a proper custodian interview prevents blind reliance on a client's general reliance of its information systems."). KBR's failure to take the reasonable step of contacting its own self-selected document custodians to ensure their data sources were collected was unreasonable and resulted in wide gaps in the existing production.

In another example, no documents have been produced from any press office custodian who worked for KBR or Halliburton during the relevant time period. *Supra* Pt.I.C.3. This Court highlighted these documents in its 2020 opinion, finding them "directly relevant." Dkt. 156 at 7. These relevant documents should have been preserved but apparently were not, whether from KBR (where Ms. Mingo worked) or Halliburton (where other custodians worked). *Supra* Pt.I.C.3. The failure to preserve these plainly relevant documents is not reasonable. *Edwards v. 4JL*, 2018 WL 2981154, at *5-6 (S.D. Texas 2018) (party has duty to preserve documents that it

has the legal right or practical ability to obtain from another); *Paisley Park Enters.*, 330 F.R.D. at 235 ("Defendants do not get to select what evidence they want to produce, or from what sources. They must produce all responsive documents or seek relief from the court").

Most significantly, KBR effectively decommissioned its document database, rendering the vast majority of its documents inaccessible with discovery pending. Dkt 207. This Court, after extensive briefing and a hearing, found that KBR chose to make discoverable documents inaccessible by decommissioning the database while discovery was ongoing. *Id.* at 2. Courts uniformly agree that destruction of ESI during the course of litigation is not only unreasonable but sanctionable. *E.g., Moody v. CSX Transportation*, 271 F.Supp.3d 410, 428 (W.D.N.Y. 2017) ("[A] party's failure to maintain electronic data in an accessible format may constitute sanctionable conduct"); *Zubulake*, 229 F.R.D. at 433 ("[P]arties also have a duty to make sure that discoverable information is not lost. Indeed, the notion of a 'duty to preserve' connotes an ongoing obligation. Obviously, if information is lost or destroyed, it has not been preserved.").

   c.  The ESI cannot be restored or replaced

It is not disputed that the missing ESI cannot be restored or replaced without the substantial expense and delay of recreating the database. KBR itself argued that its ESI is inaccessible. KBR's Opp'n to Pls. Mot. to Compel at 10-11. This Court agreed, finding "KBR's entire litigation database appears inaccessible." Dkt. 207 at 2.

   2.  Plaintiffs are prejudiced, making a remedy under Rule 37(e)(1) necessary

Under 37(e)(1), a remedy is appropriate if a party, here, Plaintiffs, is prejudiced. Fed. R. Civ. P. 37. Significantly, subsection (e)(1) does not contain an "intent" requirement; the party that lost the evidence "need not act willfully, deliberately, intentionally, or with any objective or subjective bad faith." *E.g*., *Richard v. Inland Dredging Co*. *LLC*, 2016 WL 5477750, at *4 (W.D. La. 2016); Fed. R. Civ. P. 37, Advisory Committee Notes to 2015 Amendment.

Courts have recognized that "prejudice may appear in many forms, such as plaintiffs being unable to fully respond to the secondary evidence or being required to go to great lengths in discovery to fill in the gaps in the evidence." *4DD Holdings*, 143 Fed. Cl. at 132 (internal citations omitted); *see also DR Distributors*, 513 F.Supp.3d at 981 ("Prejudice under rule 37(e) means a party's ability to obtain the evidence necessary for its case has been thwarted" and when parties are forced to litigate ESI issues).

This Court has already found that the missing ESI "is critically important to this litigation." Dkt. 207 at 2. That Plaintiffs are prejudiced cannot be seriously disputed. The prejudice is particularly acute because the missing information goes directly to information solely within KBR's control: knowledge of high-level employees (whose data has been deleted); communications between employees in Iraq and their ultimate supervisors in the United States, including two newly identified supervisors whose data has been deleted; and investigators (whose data has been deleted) who did or did not investigate relevant allegations. Courts do not hesitate to find prejudice in such circumstances. *E.g.*, *Skanska,* 2021 WL 5226547, at *7 ("[I]f there is a smoking gun in the text messages at issue, that is certainly not something Claimants will ever know"); *Taylor v. Mitre Corp.*, 2012 WL 5473715, at *8 (E.D. Va. 2012); *E*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 592 (D. Minn. 2005) (finding plaintiffs prejudiced "in presenting their case about NSI's involvement in and knowledge of the transactions in question").

Plaintiffs are indisputably unable to obtain documents from key custodians. Dkt. 207 at 2. As a result, Plaintiffs cannot obtain contemporaneous evidence of what occurred but must rely on interested-witness testimony of current and former employees, all represented by KBR's counsel, and many of whom cannot recall facts from 15 years ago. Courts uniformly recognize

this is prejudicial. *4JL*, 2018 WL 2981154 at *11 (Plaintiffs are subject to jury's credibility determinations "in the face of subjective interested-witness testimony" of employees proffered by defendant); *see also Edwards*, 2021 WL 1600282, at *10 (loss creates unfair imbalance between parties ability to procure, examine and present evidence); *Paisley Park Enters.*, 330 F.R.D. at 235–36 (prejudice where Plaintiffs cannot present the overwhelming quantity of evidence they otherwise would have); *4DD Holdings*, 143 Fed. Cl. at 132 (deletion of evidence, whether purposeful or inadvertent, created gaps that plaintiffs must now try to fill by cobbling together secondary evidence); *FTC v. Vyera Pharms.*, 2021 WL 2201282, at *3 (S.D.N.Y. 2021). Plaintiffs have had to take depositions without the benefit of documents with which to cross examine the witnesses, which courts also uniformly recognize is prejudicial. See, e.g., *4JL*, 2018 WL 2981154 at *11; *see also* Dkt. 186 at 8-9 ("Documents are often central to shaping depositions and impeaching testimony…" (citing *Nutramax Labs., Inc. v. Twin Labs. Inc.*, 183 F.R.D. 458, 461 (D. Md. 1998))).[5] In addition, Plaintiffs are unable to conduct follow up document discovery related to custodians identified or new issues raised in the depositions taken thus far. This is obviously prejudicial. *E.g.*, *DR Distributors*, 513 F.Supp.3d at 981.

 Finally, when failure to preserve adds to the time and resources that must be devoted to

---

[5] Courts agree that depositions are not an adequate substitute for document production. *Matter of In re Skanska,* 2021 WL 5226547, at *7 (N.D. Fla. 2021); *Ringers Techs. LLC v. Harmer*, 2020 WL 6385813, at *6 (S.D. Tex. 2020); *Evenson v. Johnson Bros. Liquor Co*., 2020 WL 12948541, at *10 (D. Minn. 2020); *Schmalz v. Village of N. Riverside,* 2018 WL 1704109, *4 (N.D. Ill. 2018) ("the content of text messages cannot be replaced by simply eliciting testimony from the Defendants, and by having Plaintiff accept that testimony rather than relying on the actual messages"); *McQueen v. Aramark Corp*., 2016 WL 6988820, at *4 (D. Utah Nov. 29, 2016). KBR's employees have consistently testified to having no contemporaneous recollection of relevant events. *Supra* Pt.1.D.1. And even if depositions could "test [deponents'] recollections as to what relevant information was in the deleted [ESI,] [t]hat option is neither reliable nor fair to the party who did not destroy the missing evidence." *Ringers Techs,* 2020 WL 6385813, at *6.

discovery, as here, courts uniformly recognize that is prejudicial. *E.g.*, *Edwards*, 2021 WL 1600282, at *9; *4DD Holdings*, 143 Fed. Cl. at 132; *Moody*, 271 F.Supp.3d at 430.

　　　　　a.　　Proposed remedy

Under Rule 37(e)(1) courts have imposed remedies such as precluding Defendants from filing a summary judgment motion (*Villalon v. Cameron County,* 2017 U.S. Dist. LEXIS 222483, at *13 (S.D. Tex., Jun. 22, 2017)); disallowing a defendant from asserting or arguing an affirmative defense (*Bellamy v. Walmart Stores, Tex., LLC*, 2019 WL 3936992, at *6 (W.D. Tex. 2019)); finding a fact (in that case, constructive notice of a puddle) was established (*Freidig v. Target Corp.*, 329 F.R.D. 199, 205 (W.D. Wis. 2018)); requiring defendants to stipulate to certain facts (*Williford v. Carnival Corp.*, 2019 WL 2269155, at *1 (S.D. Fla. 2019)); precluding the perpetrator party from putting on certain key evidence (*Edwards*, 2021 WL 1600282, at *9); and precluding the perpetrator from arguing that evidence gaps created by the data loss should be construed in its favor (*4DD Holdings*, 143 Fed. Cl. at 132).

Plaintiffs believe they will be able to prove their most important allegations through the evidence collected in discovery, including that KBR exercised control from the United States, that its U.S.-based managers were aware of trafficking allegations years before addressing them, and that KBR misled the press and the public about its responsibility for and response to those allegations. Nevertheless, KBR's lost ESI has prejudiced Plaintiffs in discrete ways. Plaintiffs propose the following stipulations, all supported by the evidence, to remedy that prejudice:

- In 2004, Defendants' managers and executives in the United States received reports that KBR subcontractors, including Daoud & Partners, engaged in human trafficking and forced labor. Nevertheless, Defendants' managers in the United States decided not to investigate these reports. Defendants' managers in the United States informed the public that they had investigated, knowing that information was false.

- By June 2004, Defendants' managers in the United States knew that subcontractors, including Daoud & Partners, had recruited laborers by promising jobs in Jordan or Kuwait but instead brought the workers to military bases in Iraq; knew that labor brokers had

charged workers recruitment fees that put the workers and their families in debt; and knew the workers did not have copies of their contracts and were not paid the wages originally promised them. By 2005, Defendants' managers in the United States knew that their subcontractors were holding worker passports to keep them on the job or to keep them from "jumping" to other employers.

- Defendants' managers in the United States informed the public that KBR had a policy requiring termination of subcontractors who mistreated employees, including by subjecting them to forced labor or human trafficking, though they knew that no such policy existed.

- Defendants' managers in the United States closely managed KBR LOGCAP operations and exercised control over subcontracting in Iraq, including through promulgating KBR's procurement policies and standards, supervising compliance with those policies and standards, and dictating subcontract general conditions. Defendants' managers in the United States approved Defendants' subcontracts with Daoud & Partners to operate dining facilities and provide labor at Camp Fallujah and Al Taqaddum, including each subcontract that Plaintiffs performed labor for.

- Defendants' managers, including managers in the United States, took steps to assist their subcontractors with transporting laborers to U.S. military bases in Iraq, including facilitating visas and immigration procedures.

- Defendants exercised control over Daoud & Partners' work and workers at Camp Fallujah and Al Taqaddum, including the ability to terminate Daoud employees.

       3.      The requirements of 37(e)(2) are met

Subdivision (e)(2) does not require a finding of prejudice. *Ringers Techs*, 2020 WL 6385813, at *2; *Ala. Aircraft Indus. v. Boeing*, 319 F.R.D. 730, 746 (N.D. Ala. 2017). Rather, the remedies specified in the subsection are available when the court finds that ESI was lost "with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Intent can be, and usually is, shown by circumstantial evidence. *Skanska,* 2021 WL 5226547, at *7; *Paisley Park Enters.*, 330 F.R.D. at 236 (do not need a "smoking gun" to prove intent); *Moody*, 271 F.Supp.3d at 432; *Ala. Aircraft Indus.*, 319 F.R.D. at 746; *see also Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 643-44 (S.D. Tex. 2010).

This Court has already found that KBR "was on notice about the relevance and materiality of the information" and that "Plaintiffs raised also raised the centrality of at least two

of the custodians early on and repeatedly…" Dkt. 207 at 2. Yet KBR effectively closed its database during this case's discovery period, rendering the ESI inaccessible. *Id.*.

More significantly, although it decommissioned its database, KBR preserved the ESI of 80 – eighty – other custodians for use in other litigation. *Supra* Pt.I.B. KBR also preserved nine custodians for this case – a total that included ***all seven*** of the witnesses KBR identified as having information that it would use in support of its own defenses. KBR preserved the documents of only one custodian who appeared solely on Plaintiffs' Rule 26 list, Fallujah Camp Manager Ernie Applewhite, who is deceased (and thus cannot be deposed).[6] KBR did not, however, preserve the ESI of several "critically important" custodians Plaintiffs had requested "early on and repeatedly." Dkt 207 at 2; Dkt 109 at ¶ 9.D.

Furthermore, KBR declined to reveal the complete list of the other custodians it had preserved until after Plaintiffs prevailed on their motion to compel the reconstruction of the database. *Supra* n.3. This behavior cannot be explained away as mere negligence. It was intentional and deliberate: KBR "acted with the intent to deprive another party of the information's use in the litigation." KBR plainly could have, but chose not to, preserve the ESI of Plaintiffs' requested custodians, just as it did with the 80 other custodians it preserved for use in unrelated litigation and just as it did for the witnesses it needed to support its own claims. KBR picked and chose which custodians' ESI would be available and which custodians' ESI would be lost forever.

Courts have not hesitated to find the intent requirement satisfied when, as here, a party preserves some types of ESI, including for other litigation, while destroying ESI relevant to the

---

[6] Four of the custodians KBR chose to preserve appeared on both parties' Rule 26 lists. KBR inexplicably also preserved ESI from Larry Purvis, who was on neither party's list.

case at issue. *E.g., Stevenson v. Union Pac. R.R.,* 354 F.3d 739, 748 (8th Cir. 2004) (finding intent where defendant made an effort to preserve other types of evidence); *Paisley Park Enters.*, 330 F.RD. at 235 (failure to preserve some types of ESI while destroying others is a basis to infer bad faith); *Ala. Aircraft Indus.*, 319 F.R.D. at 746; *TLS Mgmt. & Mkt. Servs v. Rodriquez-Toledo,* 2017 WL 1155743, at *1-2 (D.P.R. 2017); *Rattray v. Woodbury County* , 761 F.Supp.2d 836, 847 (N.D. Iowa 2010) (although purportedly done pursuant to a routine retention policy, the destruction of a portion of the video recording creates a strong inference of purpose); *E\*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. at 590 (finding intent because "Nomura chose to retain certain documents prior to the destruction of the hard drives.").

In most of these cases, the destruction occurred before litigation began. Here, in contrast, KBR destroyed some, but not all, of its custodial electronic files ***during discovery***. Courts find intent when evidence is destroyed after litigation begins, discovery requests have been served, and a party is on notice of the relevance of the information. *E.g.*, *Evenson v. Johnson Bros. Liquor Co*., 2020 WL 12948541, at *13; *Paisley Park Enters.,* 330 F.R.D. at 234 ("even more egregious because litigation had already commenced"); *Taylor v. Mitre*, at *6; *Seaman v. Hacker Hauling*, 840 F.Supp.2d 1106, 1115 (N.D. Iowa 2011).

The scale of the deletion is also a factor. Where, as here, many custodian files, including of relevant managers, are destroyed wholesale, courts find intent. *In Re Actos (Pioglitazone) Prods. Liability Litig*., 2014 WL 2872299, at *31 (W.D. La. 2014) (the number of custodians impacted by the spoliation is evidence of bad faith). And courts have found bad faith even where a defendant proffered a business explanation for the destruction. *E.g.*, *TLS Mgmt. & Mkt. Servs v. Rodriquez-Toledo*, 2017 WL 1155743, at *1-2 (D.P.R. 2017); *E\*Trade*, 230 F.R.D. at 589 (wiped hard drives to give computers to employees).

Here, where KBR deleted an entire database of custodians, while preserving the ESI of 80 other custodians – but not Plaintiffs' requested crucial custodians – the intent requirement is met. Even if KBR shuttered its cleaning-facility for business purposes, it is easy to infer that its selection of custodians' whose ESI it chose to preserve (mostly, its own cherry-picked favorable witnesses) and those whose ESI it chose to discard was a deliberate decision about the ESI it did and did not want to produce in this litigation. There is no discernable business purpose to preserving attorney Chris Heinrich's ESI while discarding William Jonas's ESI.

Default is the appropriate sanction for KBR's intentional deletion of the relevant custodians' ESI. *Taylor v. Mitre* at *9 ("dismissal is not an uncommon sanction imposed by courts to remedy spoliation caused by a party deleting files from its computer system"); *Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F.Supp.2d 1149, 1213 (D. Utah 2011).[7] Courts have also precluded a defendant from moving for summary judgment. *See Villalon* at *13.

## B.    Inherent Power

The Court may also issue spoliation sanctions under its inherent powers. *See Quantlab*

---

[7] *See also Gutman v. Klein*, 2008 WL 4682208, at *12 (E.D.N.Y. 2008) (lesser sanctions are ill-suited to a case where spoliator has irretrievably deleted computer files that likely contained important discovery information); *Ameriwood Indus., Inc. v. Liberman*, 2007 WL 5110313, at *4 (E.D. Mo. 2007) (granting default where defendant made a mass deletion of electronic files); *Arista Recs., L.L.C. v. Tschirhart*, 241 F.R.D. 462, 465 (W.D. Tex. 2006); *Commc'ns Ctr., Inc. v. Hewitt*, 2005 WL 3277983, at *3 (E.D. Cal. 2005). In cases predating the 2015 rule change, courts in the Fifth Circuit applied the four-factor *FDIC v. Conner* test for litigation-ending Rule 37(b) sanctions. *See* 20 F.3d 1376, 1380-81 (5th Cir. 1994). It is not clear that the *Conner* factors survive the rule change, since the new Rule 37(e)(2) requires only a "finding that the party acted with the intent to deprive another party of the information's use in the litigation." *But see Arya Risk Mgmt. Sys. v. Dufossat Cap. P.R., LLC*, 2021 WL 1554336, at *2 (S.D. Tex. 2021). Regardless, three of the four *Conner* factors—bad faith, prejudice, and severity of the sanction required for deterrence—are met here for the reasons discussed above. The remaining factor—the requirement that the client, not outside counsel, is responsible for the misconduct—is also met because the record shows that it was KBR's decision to shut down its database, not outside counsel's. *See* Dkt. 231 at 17:21-18:6 (discussing KBR's decision to shut down its database).

*Techs.*, 2014 WL 651944, at *8. To issue sanctions under its inherent powers, "[t]he Court must first find the existence of a duty to preserve the information, a culpable breach of that duty, and resulting prejudice to the innocent party." *Ashton v. Knight Transp., Inc.*, 772 F.Supp.2d 772, 800 (N.D. Tex. 2011). Just like under Rule 37(e)(2), "willful or intentional destruction of evidence to prevent its use in litigation can justify severe sanctions" issued under the Court's inherent powers. *Rimkus Consulting Grp.*, 688 F.Supp.2d at 618. The analysis above supports imposition of sanctions under this Court's inherent authority: KBR chose to preserve its favored custodians' ESI while allowing custodians' whose ESI would likely be more favorable to Plaintiffs to be lost when KBR decommission its database, and the loss of this ESI has hindered Plaintiffs' ability to prove key parts of their case.

## C.     Costs and Fees

Courts routinely award the non-spoliating party costs and fees associated with bringing their discovery-related motions as well as the costs and fees of the additional discovery. *E.g.*, *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 49–50 (D.D.C. 2019); *Nationwide Life Ins. Co. v. Betzer*, 2019 WL 5700288, at *14 (M.D. Fla. Oct. 28, 2019); *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. at 747; *McQueen v. Aramark Corp.*, 2016 WL 6988820, at *4 (D. Utah 2016). Plaintiffs therefore request the court award them their costs and fees for bringing this motion and their original motion to compel, Dkt. 191, and for contesting KBR's motion for reconsideration, Dkt. 221. Plaintiffs also request the costs of the additional depositions they must take in order to compensate for the lost ESI.

## IV.  CONCLUSION

For the reasons above, Plaintiffs' motion should be granted.

Dated: March 17, 2022

Respectfully submitted,

/s/ Agnieszka M. Fryszman
Agnieszka M. Fryszman (#459208)
Attorney in charge, *pro hac vice*
Nicholas J. Jacques, *pro hac vice*
**COHEN MILSTEIN SELLERS & TOLL
PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afryszman@cohenmilstein.com
njacques@cohenmilstein.com

Paul L. Hoffman, *pro hac vice*
John Washington, *pro hac vice*
**SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES L.L.P.**
200 Pier Ave #226
Hermosa Beach, CA 90254
Tel: (310) 396-0731
Fax: (310) 396-7040
hoffpaul@aol.com
jwashington@sshhlaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2022, I electronically filed the foregoing *Plaintiffs'*

*Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37(e)* with the Clerk of the

Court using the ECF, who in turn sent notice to all counsel of record.

Dated: March 17, 2022

/s/ Agnieszka M. Fryszman
Agnieszka M. Fryszman