**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| KRISHNA PRASAD ADHIKARI, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> KBR, INC., *et al.*, ) <br> ) <br> Defendants. ) <br> ) <br> ) | Civil Action No.: 4:16-CV-2478 <br><br> Judge Keith P. Ellison |

**PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION OF THE
COURT'S ORDER DISMISSING PLAINTIFFS' TVPRA CLAIMS**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. STANDARD OF REVIEW .............................................................................................. 1

III. BACKGROUND ............................................................................................................... 3

IV. ARGUMENT ..................................................................................................................... 4
    A.    It is Undisputed that Section 1596, Passed as Part of the TVPRA Reauthorization, Confers Extraterritorial Jurisdiction over Civil Suits under the TVPRA ............................................................................................ 4
    B.    CEJA, Passed as Part of the TVPRA Reauthorization, Confers Extraterritorial Jurisdiction over Civil Suits Under the TVPRA in the Same Manner as Section 1596 ................................................................... 6
        1.    *Morrison* Two-Step Framework Established by the Supreme Court ......... 7
        2.    CEJA Provides a Clear Indication that Congress Intended Section 1595 to Apply "to at Least Some Foreign Conduct" .................................. 9
    C.    The Court Should Reconsider in Part its Order Dismissing Plaintiffs' TVPRA Claims so this Case May be Adjudicated on the Merits ........................ 11

V. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abafita v. Aldukhan*,
  2019 WL6735148 (S.D.N.Y 2019) ............................................................................................5, 9

*Adhikari v. Daoud & Partners (Adhikari I)*,
  95 F.Supp.3d 1013 (S.D. Tex. 2015) ...............................................................................1, 5, 6, 7

*Adhikari v. Kellogg Brown & Root, Inc. (Adhikari I)*,
  845 F.3d 184 (5th Cir. 2017) ............................................................................................5, 7, 9

*Austin v. Kroeger Tex., L.P.*,
  864 F.3d 326 (5th Cir. 2017) ......................................................................................1, 2, 3, 12

*Ayiba v. Wells Fargo Bank, N.A.*,
  2011 WL 6812534 (S.D. Tex. 2011) ................................................................................................2

*Colli v. S. Methodist Univ.*,
  2011 WL 3524403 (N.D. Tex. Feb. 14, 2011) ..................................................................................2

*Crostley v. Lamar Cnty.*,
  717 F.3d 410 (5th Cir. 2013) ...........................................................................................................1

*United States ex rel. Fadlalla v. DynCorp Int'l LLC*,
  402 F.Supp.3d 162 (D. Md. 2019) ................................................................................................10

*Iturralde v. Shaw Grp., Inc.*,
  2012 WL 1565356 (M.D. La. 2012), *aff'd*, 512 F. App'x 430 (5th Cir. 2013) .........................2

*Iturralde v. Shaw Grp., Inc*,
  512 F. App'x 430 (5th Cir. 2013) ...................................................................................................2

*Morrison v. Natl Bank Ltd,.*
  561 U.S. 247 (2010) ........................................................................................................................7

*Plaintiff A v. Schair*,
  2014 WL 12495639 (N.D. Ga. 2014) .............................................................................................5

*RJR Nabisco, Inc. v. European Cmty.*,
  579 U.S. 325 (2016) ...............................................................................................................7, 8, 9

*Roe v. Howard*,
  917 F.3d 229 (4th Cir. 2019) ..............................................................................................8, 9, 10, 11

*Saqui v. Pride Cent. Am., LLC*,
    595 F.3d 206 (5th Cir. 2010) ............................................................................................2

*United States v. Baston*,
    818 F.3d 651 (11th Cir. 2016) .......................................................................................5, 9

**Statutes**

18 U.S.C. § 1581..............................................................................................................................4

18 U.S.C. § 1583..............................................................................................................................4

18 U.S.C. § 1584..............................................................................................................................4

18 U.S.C. § 1589.........................................................................................................................3, 4

18 U.S.C. § 1590.........................................................................................................................3, 4

18 U.S.C. § 1591..............................................................................................................................4

18 U.S.C. § 1592..............................................................................................................................3

18 U.S.C. § 1596.................................................................................................................. *passim*

18 U.S.C. § 3271.........................................................................................................................9, 10

Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. 108-193,
    117 Stat. 2875 ..................................................................................................................3

Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. 108-193
    § 4(a)(4)(A), 117 Stat. 2875, 2878..................................................................................3

Trafficking Victims Protection Act Reauthorization of 2005, Pub. L. 109-164,
    119 Stat. 3558 ..........................................................................................................4, 6, 7

Victims of Trafficking and Violence Protection Act of 2000, Div. A.,
    Pub. L. 106-386, 114 Stat. 1464 ............................................................................3, 6, 11

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,
    Pub. L. 110-457, 122 Stat. 5044 ..................................................................................4, 5

**Other Authorities**

Fed. R. Civ. P. 1..............................................................................................................................2

Fed. R. Civ. P. 54.....................................................................................................................1, 2, 11

Fed. R. Civ. P. 59........................................................................................................................1, 2

Fed. R. Civ. P. 60 .................................................................................................................... 2

## I. INTRODUCTION

Plaintiffs respectfully move for reconsideration of this Court's order dismissing their Trafficking Victims Protection Reauthorization Act ("TVPRA") claims for lack of jurisdiction.

A small number of courts have grappled with the scope of extraterritorial jurisdiction under the TVPRA's civil-lawsuit provision, including this Court and the Fifth Circuit. Recently, an additional small but uniform number of courts have held that the civil suit provision applies extraterritorially to offenses committed by military contractors as a result of the passage of the Civilian Extraterritorial Jurisdiction Act as part of the Trafficking Victims Protection Reauthorization Act of 2005.[1]

The text of the Civilian Extraterritorial Jurisdiction Act, its place in the statutory scheme, and, most importantly, its enactment as part of the reauthorization of the TVPRA itself, provide the unmistakable clear affirmative indication of Congressional intent that the Supreme Court and the Fifth Circuit require: Congress' express textual adoption of "a predicate statute that manifests an unmistakable congressional intent to apply extraterritorially." Plaintiffs' analysis of CEJA tracks the analysis employed by the Supreme Court, Fifth Circuit and Fourth Circuit. In view of this authority, the Court should reconsider its order dismissing Plaintiff Bhatta, Adhikari, and Gurung's post-2005 TVPRA claims so that it may decide their claims on the merits.

Plaintiffs have met and conferred with KBR, and Defendants oppose this motion.

## II. STANDARD OF REVIEW

When, as here, an order dismisses some of the claims in an action but does not culminate in a final judgment, a motion for reconsideration is governed by Federal Rule of Civil Procedure

---

[1] "Civilian Extraterritorial Jurisdiction Act" is the colloquial name used by courts and advocates, though not actually found in the statute. For convenience Plaintiffs use it here.

1

54. *Crostley v. Lamar Cnty.*, 717 F.3d 410, 421 (5th Cir. 2013); *Adhikari v. Daoud & Partners (Adhikari I)*, 95 F.Supp.3d 1013, 1015 (S.D. Tex. 2015). Rule 54(b) is "less stringent" than the standard for a motion for a new trial under Rule 59(e). *Austin v. Kroeger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017); *see also Iturralde v. Shaw Grp., Inc*, 512 F. App'x 430, 432 (5th Cir. 2013).

Pursuant to Federal Rule of Civil Procedure 54(b), the Court retains the "inherent procedural power to reconsider, rescind, or modify" an order that adjudicates fewer than all the claims among the parties at any time prior to final judgment. *Iturralde*, 512 F. App'x at 432 (quoting *Melancon v. Texaco, Inc*., 659 F.2d 551, 553 (5th Cir. Unit A 1981)). The court may reconsider an interlocutory order "at any time before the entry of a judgment adjudicating all the claims," Fed. R. Civ. P. 54(b), and such reconsideration is appropriate for any reason deemed sufficient, "even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210–11 (5th Cir. 2010) (internal quotation omitted); *see also Iturralde v. Shaw Grp., Inc*., 2012 WL 1565356, at *3 (M.D. La. 2012) (explaining that, because it was deciding the case under the Rule 54 standard, reconsideration may be appropriate even in the absence of a manifest error of law), *aff'd*, 512 F. App'x 430 (5th Cir. 2013).

The standard for Rule 54 is "less exacting than that imposed by Rules 59 and 60." *Colli v. S. Methodist Univ.*, 2011 WL 3524403, at *1 (N.D. Tex. Feb. 14, 2011). District courts sometimes look to the Rule 59(e) standards to inform their Rule 54(b) analyses, *see, e.g.*, *Ayiba v. Wells Fargo Bank, N.A.*, 2011 WL 6812534, at *2 (S.D. Tex. 2011), but the Fifth Circuit has cautioned that courts should apply a more forgiving analysis on motion for reconsideration when a merits issue is at stake. *See Austin*, 864 F.3d at 337–38. This is because of the Federal Rules'

2

"preference toward resolving the case on the merits and avoiding any dismissal based on a technicality." *Id.* at 337; *see also* Fed. R. Civ. P. 1. Likewise, the Fifth Circuit has said that "applying Rule 59(e)'s 'strict prohibition' against considering new arguments that could have been raised before the district court's ruling [is] 'unwarranted' and 'of legal consequence' when erroneously applied to interlocutory orders." *Austin*, 864 F.3d at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)).

KBR agrees with this standard. *See* KBR's Mot. to Reconsider Order Granting Pls.' Mot. to Compel Sequestered ESI, Dkt. 213, at 2-3.

### III.  BACKGROUND

Congress first enacted the Trafficking Victims Protection Act in 2000 and has expanded and strengthened the statute through successive reauthorizations. Through the last four presidential administrations and on a bipartisan basis, Congress has pursued an aggressive, multifaceted strategy to eliminate the worldwide scourge of modern-day slavery. *See Various Bills and Resolutions Before the H. Comm. on Foreign Aff.*, 110th Cong. 128 (2007) (statement of Rep. Smith) (Trafficking "is one of those issues where there has been no gap between us on either side of the aisle. It has united conservatives, moderates, and liberals in a grand fight to combat the scourge of modern-day slavery."). The TVPRA is an interlocking statutory scheme that defines a series of trafficking offenses and imposes civil liability for violations of those offenses.

The original statute was enacted in 2000. *See* Victims of Trafficking and Violence Protection Act of 2000, Div. A., Pub. L. No. 106-386, 114 Stat. 1464 (2000). Codified primarily in Chapter 77, Title 18, the 2000 TVPRA defined the crimes of forced labor and trafficking. *See, e.g.*, 18 U.S.C. §§ 1589, 1590, 1592.

In 2003, Congress reauthorized and amended the TVPRA. *See* Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. 108-193, 117 Stat. 2875. Congress added a private civil action coterminous with the specific criminal prohibitions established by the TVPRA. *Id.* § 4(a)(4)(A), 117 Stat. 2875, 2878. Thus, as of 2004, the TVPRA provided victims of those violations with a civil remedy that directly incorporated and is coextensive with specific criminal predicate acts.

Congress reauthorized the TVPRA again in 2005 and 2008. *See* Trafficking Victims Protection Act Reauthorization of 2005, Pub. L. No. 109-164, 119 Stat. 3558; William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044. In both reauthorizations, Congress expanded the extraterritorial jurisdiction of the statute.  First, Congress extended extraterritorial jurisdiction over trafficking offenses committed by persons (including contractors) "employed by or accompanying the Federal Government outside the United States." TVPRA of 2005, 119 Stat. at 3562.  Later, Congress extended extraterritorial jurisdiction over six specified trafficking offenses when committed by a United States national, a lawfully admitted alien, or a person present in the United States, whether or not the person was employed by the United States government. William Wilberforce TVPRA of 2008, Pub. L. 110–457, § 223(a), 122 Stat. 5044, 5071.

## IV.  ARGUMENT

### A.  It is Undisputed that Section 1596, Passed as Part of the TVPRA Reauthorization, Confers Extraterritorial Jurisdiction over Civil Suits under the TVPRA

Section 1596 does not apply in this case, but the Fifth Circuit's analysis of that provision provides a useful backdrop, so Plaintiffs provide that background here.

18 U.S.C. § 1596 provides that "[i]n addition to any domestic or extra-territorial jurisdiction provided by law, the courts of the United States have extra-territorial jurisdiction

4

over any offense (or any attempt or conspiracy to commit an offense)" under specified provisions[2] of Chapter 77, Title 18, when an alleged offender meets certain conditions.[3] Section 1596 was enacted in 2008 as section 223 of Public Law 110-457, the William Wilberforce Trafficking Victims Protection Reauthorization Act.

The Fifth Circuit held in *Adhikari I* that "by conferring 'extraterritorial jurisdiction over any offense … under' the TVPRA, § 1596 permits private parties to pursue a civil remedy under the TVPRA for extraterritorial violations." *Adhikari v. Kellogg Brown & Root, Inc. (Adhikari I)*, 845 F.3d 184, 204 (5th Cir. 2017); *see also id*. at 200 (noting that the Supreme Court has explained that "Congress, even in a jurisdictional provision, can indicate that it intends federal law to apply to conduct occurring abroad."). Other courts agree. *See, e.g., United States v. Baston*, 818 F.3d 651, 668 (11th Cir. 2016) (upholding constitutionality of section 1596 and ordering restitution based on extraterritorial conduct); *Abafita v. Aldukhan*, 2019 WL6735148, at *5 (S.D.N.Y 2019) (a civil claim under the TVPRA can be brought for extraterritorial violations); *cf. Plaintiff A v. Schair*, 2014 WL 12495639, at *6 (N.D. Ga. 2014) (plaintiffs trafficked in Brazil could salvage their civil claim "if section 1596 could be retroactively applied."). As a result, it is undisputed in this Circuit that a civil remedy is available under the TVPRA for those predicate violations that are expressly extraterritorial, including those over which section 1596 extended extraterritorial jurisdiction.

The Fifth Circuit held that Section 1596 did not have retroactive effect and therefore could not provide the basis for a civil suit in *Adhikari I*, 845 F.3d at 202. The Court of Appeals also concluded that the Military Extraterritorial Jurisdiction Act (a pre-existing jurisdictional

---

[2] The extraterritorial predicate acts are 18 U.S.C. §§ 1581, 1583, 1584, 1589, 1590 and 1591.

[3] For example, the offender must be a U.S. national or present in the United States.

5

statute enacted in 2000, well before Congress passed a civil remedy in the TVPRA) did not provide the necessary textual support for concluding that the TVPRA's civil remedy extended to extraterritorial conduct:

> It is simply not clear that Congress affirmatively intended to give extraterritorial effect to the TVPRA civil-remedy provision *via an unrelated criminal statute* that is nowhere referenced in the TVPRA. We agree with the district court's conclusion that MEJA is "simply not relevant to the question of whether Congress intended to legislate extraterritorially when it enacted ... the TVPRA." The connection between these statutes is too attenuated for the Court to find jurisdiction on this basis.

*Adhikari I*, 845 F.3d at 206–07 (emphasis added).

This Court held the Fifth Circuit's ruling in *Adhikari I* compelled the conclusion that the court lacked jurisdiction over Plaintiffs' TVPRA claims because the Fifth Circuit had concluded that the TVPRA lacked a clear, affirmative indication that it applied extraterritorially prior to the enactment of Section 1596. Mem. & Order, Dkt. 105 (Sept. 25, 2017).

Plaintiffs respectfully submit that such an indication exists, consistent with the Fifth Circuit's holding and its reasoning.

**B.     CEJA, Passed as Part of the TVPRA Reauthorization, Confers Extraterritorial Jurisdiction over Civil Suits Under the TVPRA in the Same Manner as Section 1596**

The Trafficking Victims Protection Act of 2000 has been amended several times since its enactment. One such amendment, is the addition of Section 1596, discussed above. Another such amendment is the Civilian Extraterritorial Jurisdiction Act, which was included *in the Trafficking Victims Protection Act Reauthorization of 2005*, Pub. L. No. 109-164, 119 Stat. 3558. In *Adhikari I*, the Fifth Circuit concluded that an "unrelated criminal statute that is nowhere referenced in the TVPRA" could not indicate that the TVPRA civil remedy applied to extraterritorial conduct. *Adhikari I*, 845 F.3d at 206–07. CEJA presents no such concern— Congress passed this provision in the Reauthorization of the TVPRA *specifically to address*

*trafficking* by U.S. government contractors, finding that "[t]he involvement of employees and contractors of the United States Government … in trafficking in persons, facilitating the trafficking in persons, or exploiting the victims of trafficking in persons is inconsistent with United States laws and policies and undermines the credibility and mission of the United States Government programs in post-conflict regions." Trafficking Victims Protection Reauthorization Act of 2005, Pub. L. No. 109-164, 119 Stat. 3558. In *Adhikari I*, the Fifth Circuit observed that standing alone Section 1595 did not rebut the presumption against extraterritoriality in that case because, in 2004 when the events in that case occurred, there was "no express indication of extraterritorial application in the private cause-of-action provision, § 1595, ***or its substantive prohibitions, §§ 1589 and 1590***." *Adhikari I*, 845 F.3d at 200 (emphasis added). That is not the case here. CEJA provides precisely the express indication of extraterritorial application that was lacking previously. Indeed, it was passed as part of the TVPRA reauthorization in a section entitled "Extraterritorial Jurisdiction Over Certain Trafficking in Persons Offenses." *See* TVPRA of 2005, 119 Stat. at 3562. Thus, it operates precisely as § 1596, described above, operates. Like section 1596, CEJA provides the textual statutory support for applying the civil remedy to a limited set of extraterritorial claims. The textual analysis tracks the analysis set forth by the Supreme Court.

     1.    *Morrison* Two-Step Framework Established by the Supreme Court

As this Court observed, statutes are presumed not to have extraterritorial application absent Congressional intent to the contrary. Dkt. 105 at 4 (citing *Morrison v. Natl Bank Ltd,*. 561 U.S. 247, 255 (2010)). To determine if a statute applies extraterritorially, courts use a two-step inquiry. *Id*. (citing *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325 (2016)). At the first step, the court must determine whether the statute gives a clear, affirmative indication that it applies extraterritorially. *RJR Nabisco*, 579 U.S. at 337; Dkt. 105 at 5. If it does not, a court moves on to

7

step two: the statute's focus. *RJR Nabisco*, 579 U.S. at 337. It is unnecessary to reach step two if the court finds the statute applies extraterritorially at step one. *Id*. at 337, 342.

Here, step one of the two-step framework is satisfied. Thus, it is unnecessary to reach step two.[4]

In *RJR Nabisco*, the Supreme Court found that the presumption of extraterritoriality was rebutted although the RICO statute itself was silent on extraterritoriality. *RJR Nabisco*, 579 at 338. The Supreme Court found textual evidence that Congress' incorporation of extraterritorial predicates into RICO gave a clear affirmative indication that RICO § 1962 applied to foreign racketeering activity "—but only to the extent that the predicates alleged in a particular case themselves apply extraterritorially." *Id*. at 339; *see also id*. ("we emphasize the important limitation that foreign conduct must violate 'a predicate statute that manifests an unmistakable congressional intent to apply extraterritorially'" (internal citation omitted)). The Supreme Court thus found that RICO § 1962(b) and (c) both applied extraterritorially, "provided that each of those offenses violates a predicate statute that is itself extraterritorial." *Id*. at 340; *see also id*. at 345 (pattern of racketeering can consist of predicate offenses "committed in a foreign country in violation of a predicate statute that applies extraterritorially"). Conversely, the Supreme Court held that RICO § 1964 did not reach extraterritorial conduct because § 1964 was not coextensive with the predicate statutes: Congress had limited the scope of compensable injury to domestic "injury to business or property." *Id*. at 346; *Roe v. Howard*, 917 F.3d 229, 243 (4th Cir. 2019) ("Justice Alito emphasized that the text of § 1964(c) limited its application to certain types of injuries").

---

[4] Plaintiffs' motion does not disturb this Court's analysis of the TVPRA under step two of the RJR framework. Dkt. 105 at 5. Plaintiffs' motion is limited to step one.

Here, the Fifth Circuit and other courts have agreed that the TVPRA civil remedy is coextensive with the predicate statutes it incorporates and to the extent those predicate statutes apply to extraterritorial conduct, the civil remedy is available. *Howard*, 917 F.3d at 242 ("Applying this rule to the TVPA, we are satisfied that § 1595 reflects congressional intent that it applies extraterritorially to the extent that a plaintiff seeks redress for a predicate offense 'that is itself extraterritorial.'"); *Adhikari I*, 845 F.3d at 204 ("by conferring 'extraterritorial jurisdiction over any offense … under' the TVPRA, § 1596 permits private parties to pursue a civil remedy under the TVPRA for extraterritorial violations"); *Abafita*, 2019 WL6735148 at *5; *see also Baston*, 818 F.3d at 666 (TVPRA restitution statute is extraterritorial to the extent section 1596 is extraterritorial).

The only question that remains is whether any of the predicates applied extraterritorially during the relevant time period here. The Supreme Court instructs that "the most obvious textual clue" is that the relevant statute includes "a number of predicates that plainly apply to at least some foreign conduct." *RJR Nabisco*, 579 U.S. at 338; *Howard*, 917 F.3d at 241. CEJA, passed as part of the TVPRA reauthorization, extends jurisdiction "to at least some foreign conduct."

2.  CEJA Provides a Clear Indication that Congress Intended Section 1595 to Apply "to at Least Some Foreign Conduct"

As noted above, as part of the TVPRA reauthorization of 2005, Congress enacted a provision extending jurisdiction over Title 18 trafficking offenses committed by United States government employees. TVPRA of 2005, § 103. That provision was later codified as 18 U.S.C. § 3271. As the Fourth Circuit pointed out, "if plainer indication was needed, Congress included § 3271 in chapter 212A of the TVPRA Reauthorization, titled 'Extraterritorial Jurisdiction Over Certain Trafficking in Persons Offenses.'" *Howard*, 917 F.3d at 244. The jurisdiction indisputably includes the offenses at issue here: sections 1589 and 1590 are both indisputably

9

part of chapter 77, title 18, of the U.S. Code. *Howard*, 917 F.3d at 244 ("since 2006, those sections have applied to extraterritorial acts committed by United States employees"); 18 U.S.C. § 3271.

The provision applies only to persons "employed by or accompanying" the United States government abroad. 18 U.S.C. § 3271. However, that category includes KBR and its subcontractors. *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F.Supp.3d 162, 198-9 (D. Md. 2019) (Section 3271 applies to government contractors); 18 U.S.C. § 3272(1)(A) (defining covered persons to include "a Federal contractor (including a subcontractor at any tier)").[5]

Two courts have analyzed CEJA, and both have concluded that it extends extraterritorial jurisdiction over trafficking offenses committed by United States diplomats (*Howard*, 917 F.3d at 244) and by United States government contractors (*Fadlalla*, 402 F. Supp. 3d at 199). Both courts concluded that therefore the TVPRA civil remedy was available for the specified extraterritorial predicate offenses. Applying the same analysis as the Fifth Circuit and this Court, the Fourth Circuit found the TVPRA civil remedy "expressly and directly incorporates the TVPA's criminal predicates, many of which manifestly apply to foreign conduct." *Howard*, 917 F.3d at 243; *see also Fadlalla*, 402 F. Supp. 3d at 199. There, as here, those criminal predicates include the trafficking offense that fall within CEJA – trafficking offenses committed by those

---

[5] CEJA does not render Section 1596, which was added in 2008, surplusage. That is because CEJA is more limited in scope—it applies only to those employed by the federal government abroad. *Howard*, 917 F.3d at 244. Section 1596, although also limited, is broader: it expands jurisdiction to United States nationals or aliens lawfully admitted for permanent residence, regardless of the actor's employer, and indeed was designed specifically to provide jurisdiction that was in "*addition* to any domestic or extra-territorial jurisdiction otherwise provided by law" 18 U.S.C. § 1596 (emphasis added).

employed abroad by the federal government. *Howard*, 917 F.3d at 244; *Fadlalla*, 402 F. Supp. 3d at 199. As far as Plaintiffs are aware, no court to evaluate CEJA has reached a contrary conclusion.

Three of the Plaintiffs in this case (Krishna Adhikari, Biplav Bhatta, and Lukendra Gurung) were held against their will until 2006 (for Biplav Bhatta) and 2007 (for the others), well after the enactment of CEJA. Relief under this provision is not available, unfortunately, for Plaintiff Suraj Lamichanne.

Congress passed the TVPRA to provide survivors of human trafficking and forced labor the strong, robust toolkit needed to combat the gross injustice that human trafficking represents. Plaintiffs—who were told they would be working at a luxury resort in Jordan but were instead held against their will in horrendous conditions and feared for their lives daily in a warzone—are precisely who this bipartisan Act was designed to protect. When Plaintiffs' claims were first heard in 2017, Plaintiffs and this Court lacked the clear precedent on how CEJA, which represents one of many steps taken by Congress to expand TVPRA jurisdiction, applied to their claims. Following the Fourth Circuit's decision in *Roe v. Howard*, and subsequent district court cases, such a shortcoming is no longer present. Plaintiffs thus submit that, in order to avoid a manifestly unjust outcome and to ensure Congress' important goals are effectuated, this Court should find jurisdiction exists over Plaintiffs TVPRA claims as a result of CEJA.

**C.     The Court Should Reconsider in Part its Order Dismissing Plaintiffs' TVPRA Claims so this Case May be Adjudicated on the Merits**

Applying the more liberal Rule 54(b) standard, and with an eye toward the Federal Rules' preference for adjudicating cases on the merits, the Court should reconsider its order dismissing Plaintiffs Adhikari's, Bhatta's, and Gurung's claims under the Trafficking Victims Protection Act for lack of jurisdiction so their claims can be heard on the merits. In light of the interests of

justice and adjudicating this dispute on the merits, the Court should revisit KBR's motion to dismiss with the benefit of this additional legal development on the matter. *See Austin*, 864 F.3d at 336.

Although not a factor the Court needs to consider on a motion for reconsideration, Plaintiffs note that reconsideration of Plaintiffs' TVPRA claims at this stage in the litigation would cause no prejudice to KBR and would not affect the case's schedule as there is significant overlap in the claims and the discovery. Moreover, the facts that give the Court jurisdiction over Plaintiffs' TVPRA claims under CEJA – i.e., KBR's status as a military contractor working on U.S. military installations in Iraq during 2006 and 2007 – are not in dispute.

## V. **CONCLUSION**

For the above reasons, Plaintiffs' motion for rehearing should be granted.

| | |
|---|---|
| March 25, 2022 | Respectfully submitted, |

/s/ Agnieszka M. Fryszman
Agnieszka M. Fryszman
Attorney in charge, *pro hac vice*
Nicholas J. Jacques, *pro hac vice*
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com
njacques@cohenmilstein.com

Paul L. Hoffman, *pro hac vice*
John Washington, *pro hac vice*
Schonbrun Seplow Harris Hoffman & Zeldes
200 Pier Ave. #226
Hermosa Beach, CA 90254
Tel: (310) 396-0731
Fax: (310) 396-7040
hoffpaul@aol.com
jwashington@sshhlaw.com

*Attorneys for Plaintiffs*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2022, I electronically filed the *Plaintiffs' Motion for Partial Reconsideration of the Court's Order Dismissing Plaintiffs' TVPRA Claims* with the Clerk of the Court using the ECF, who in turn sent notice to all counsel of record.

Dated:   March 25, 2022                                           /s/ Agnieszka M. Fryszman
                                                                                Agnieszka M. Fryszman